Ramiro CASSO, M.D., Petitioner,

v.

Othal E. BRAND, Respondent.

No. C–7246.

Supreme Court of Texas.

May 10, 1989.

Rehearing Denied Oct. 11, 1989.

David Casso and Roger Reed, McAllen, for petitioner.

Donald W. Allee, McAllen, for respondent.

## OPINION

PHILLIPS, Chief Justice.

This case involves the showing a defendant must make to obtain a summary judgment in Texas courts in a defamation. action brought by a public official or public figure. The court of appeals reversed the trial court's summary judgment in favor of defendant and remanded for a trial on the merits, holding that defendant had failed to establish an absence of actual malice as a matter of law. 742 S.W.2d 726. While the decision below correctly applied existing Texas case law, we overrule two prior decisions of this court to hold that, as to some of the allegedly defamatory statements in issue, defendant did negate actual malice as a matter of law. We affirm the judgment of the court of appeals in part and reverse in part, remanding a portion of this cause to the trial court for further proceedings.

### Facts

Othal E. Brand brought this action based on statements allegedly made by Dr. Ramiro Casso during and after their political contest for Mayor of McAllen. Brand, the incumbent, defeated Casso on May 9, 1981, and brought this suit on July 23 of the same year.

Brand's original petition complained that he was injured by false and defamatory statements in two of Casso's radio campaign advertisements. Both advertisements focused on Casso's allegations that Brand knew of and condoned certain alleged acts of brutality by members of the McAllen Police Department. These allegations were based on testimony given in a pending federal lawsuit, *Robles v. City of McAllen*, No. CA B–81–58 (S.D.Tex. filed 1981), by James Borman, then senior captain of the McAllen Police Department.

In particular, Brand alleged that the following statements from the Casso ads were false and defamatory:

Brand ordered Police Captain Jim Borman, who testified this week before said judge, that Brand himself ordered him to destroy the tapes. This shows clearly that Mayor Brand gave his approval to these acts of brutality, and later he intended to destroy the evidence that indicts and convicts him.

.    .    .    .    .

[R]emember we cannot leave in power this barbarian Brand that allowed the brutalities and beatings of our children in the Police Department, when he himself, Brand, knew what was going on.

After the lawsuit was filed, *The Nation* magazine in its September 26, 1981, issue

published several statements attributed to Casso regarding Brand. Brand timely amended his pleadings to complain of those statements as well. Specifically, he alleged that this statement was false and defamatory:

> [A]ccording to Casso, "Mr. Brand tried to make a deal which would have shut the hospital doors to our city's poor, without even notifying the citizens of the plan. Apparently, he hadn't bothered to look at the city charter."

Furthermore, he complained about Casso's alleged statement that Brand ruled McAllen like an "ayatollah" and Casso's alleged characterization of the Brand administration as an "iron fist."

### History of the Litigation

In February, 1986, Casso moved for summary judgment, alleging that all the statements in issue were either true or substantially true, were absolutely or conditionally privileged under Article 5432 of the Texas Revised Civil Statutes,[1] constituted fair comment, or were made without malice. In support of this motion, Casso attached his own affidavit, together with a transcript of Captain Borman's entire testimony in the *Robles* case. Brand filed a response and supporting brief, but no summary judgment proof, in response to the motion.

The trial court granted Casso's motion in its entirety. The court of appeals, agreeing with Brand that Casso's summary judgment proof did not negate one or more elements of Brand's cause of action as a matter of law, reversed the judgment of the trial court and remanded the cause. We granted application for writ of error to examine our standards for granting summary judgment in public figure defamation cases.

### Fact vs. Opinion

■ Casso initially argues in this court that the statements in issue are mere opinions, and thus not defamatory. He relies

on *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339–40, 94 S.Ct. 2997, 3007, 41 L.Ed.2d 789, 805 (1974), where the Supreme Court explained:

> Under the First Amendment there is no such thing as a false idea. However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas.

We do not decide this point, however, because Casso has failed to preserve this issue for our determination. Nothing in his motion for summary judgment, or in Brand's reply, suggested to the trial court that the statements in question were mere opinions, and therefore, not actionable. Rule 166a of the Texas Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if ... the moving party is entitled to judgment as a matter of law *on the issues expressly set out in the motion or in an answer or any other response.*" (Emphasis added.) Thus, all theories in support of a summary judgment, as well as all opposing issues, must be presented in writing to the court at the hearing. As this court stated in *Chessher v. Southwestern Bell Telephone Co.*, 658 S.W.2d 563, 564 (Tex.1983): "It is axiomatic that one may not be granted judgment as a matter of law on a cause of action not addressed in a summary judgment proceeding."

In his motion for summary judgment, Casso did assert that the statements were absolutely or conditionally privileged, but he limited this claim by a specific reference to Tex.Rev.Civ.Stat. art. 5432 (*repealed* 1985). That statute, now codified as Section 73.002 of the Civil Practice and Remedies Code, applies only to "fair, true and impartial" accounts of various official proceedings or to the "reasonable and fair comment on or criticism of" an official act by a newspaper or other periodical. The statute simply has no applicability to a private defendant like Casso. By waiting until his application for writ of error in this

---

1. Revised Civil Statutes of the State of Texas, § 1, art. 5432, 39th Leg., 1925 Tex.Rev.Civ.Stat. 2, 1530, *amended by* Act approved Mar. 12, 1927, ch. 80, 40th Leg., 1927 Tex.Gen. & Spec. Laws 121, *repealed by* Civil Practice and Remedies Code, ch. 959, sec. 9(1), 1985 Tex.Gen.Laws 3242, 3322 (currently codified as Tex.Civ.Prac. & Rem.Code Ann. § 73.002 (Vernon 1987)).

court, Casso waived this theory. *See City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671 (Tex.1979).

### Status of the Parties

■ Because we must assume, for purposes of this review, that the statements in issue were capable of being defamatory, we must at the outset determine to what degree, if any, the United States Constitution or our common law precludes our state from applying its defamation laws to Casso's alleged statements. We hold that Brand, as a public official, cannot recover unless he proves by clear and convincing evidence that Casso made false and defamatory statements about him with actual malice.

The Supreme Court has held that public officials and public figures must meet the clear and convincing burden when suing publishers or media defendants for defamation in order to preserve "uninhibited, robust, and wide-open" debate on public issues. *New York Times Co. v. Sullivan,* 376 U.S. 254, 270, 84 S.Ct. 710, 721, 11 L.Ed.2d 686, 701 (1964). As the Court explained in *Gertz:*

> The *New York Times* standard defines the level of constitutional protection appropriate to the context of defamation of a public person. Those who, by reason of the notoriety of their achievements or the vigor and success with which they seek the public's attention, are properly classed as public figures and those who hold governmental office may recover for injury to reputation only on clear and convincing proof that the defamatory falsehood was made with knowledge of its falsity or with reckless disregard for the truth.

418 U.S. at 342, 94 S.Ct. at 3008, 41 L.Ed.2d at 806–07.

The Supreme Court has yet to decide, however, whether this standard is also constitutionally required when public officials like Brand or public figures sue private individuals like Casso for defamation. *Hutchinson v. Proxmire,* 443 U.S. 111, 133–34 n. 16, 99 S.Ct. 2675, 2687 n. 16, 61 L.Ed.2d 411, 430 n. 16 (1979). The appropriate standard is therefore left to the states for determination. *See Gertz,* 418 U.S. at 345–48, 94 S.Ct. at 3010–11, 41 L.Ed.2d 807–10. Like the court of appeals, we have no hesitancy in requiring Brand, under Texas common law, to meet the *New York Times* burden of proof. 742 S.W.2d at 728. Brand himself has not questioned this standard, and we are reluctant to afford greater constitutional protection to members of the print and broadcast media than to ordinary citizens. The First Amendment affords equal dignity to freedom of speech and freedom of the press, see *Davis v. Schuchat,* 510 F.2d 731, 734 n. 3 (D.C.Cir.1975), and the "[i]nherent worth of ... speech in terms of its capacity for informing the public does not depend upon the identity of its source." *First Nat'l Bank v. Bellotti,* 435 U.S. 765, 777, 98 S.Ct. 1407, 1416, 55 L.Ed.2d 707, 718 (1978). We, thus, join those states which have extended the *New York Times* standard to defamation suits by public officials and public figures against non-media defendants.[2]

### Truth as a Matter of Law

■ Casso claims that summary judgment was proper because he established the truth of the statements in question as a

---

**2.** *See Antwerp Diamond Exch., Inc. v. Better Business Bureau,* 130 Ariz. 523, 527, 637 P.2d 733, 737 (1981); *Jackson v. Filliben,* 281 A.2d 604, 605 (Del.1971); *Mehau v. Gannett Pac. Corp.,* 66 Haw. 133, 143–44, 658 P.2d 312, 320 (1983); *Colson v. Stieg,* 89 Ill.2d 205, 212–13, 60 Ill.Dec. 449, 452–453, 433 N.E.2d 246, 249–50 (1982); *Anderson v. Low Rent Housing Comm'n,* 304 N.W.2d 239, 247 (Iowa), *cert. denied,* 454 U.S. 1086, 102 S.Ct. 645, 70 L.Ed.2d 621 (1981); *Hirman v. Rogers,* 257 N.W.2d 563, 566 (Minn. 1977); *Williams v. Pasma,* 202 Mont. 66, 75–76, 656 P.2d 212, 216–17 (1982), *cert. denied,* 461 U.S. 945, 103 S.Ct. 2122, 77 L.Ed.2d 1302 (1983); *Dairy Stores, Inc. v. Sentinel Publishing Co.,* 104 N.J. 125, 153, 516 A.2d 220, 234 (1986); *DeCarvalho v. DaSilva,* 414 A.2d 806, 812 (R.I.1980); *see also* Note, *The Burden of Proving Truth or Falsity in Defamation: Setting a Standard for Cases Involving Nonmedia Defendants,* 62 N.Y.U. L.Rev. 812 (1987); *but see Denny v. Mertz,* 106 Wis.2d 636, 654, 318 N.W.2d 141, 152–53, *cert. denied,* 459 U.S. 883, 103 S.Ct. 179, 74 L.Ed.2d 147 (1982).

matter of law.[3] This argument is not persuasive. First, Casso never even claimed, much less proved, that all of the statements in issue were true. His summary judgment affidavit stated only that Captain Borman's testimony established that Brand ordered the destruction of certain tapes regarding police brutality. Casso's proof was absolutely silent about the truth or falsity of the other allegedly defamatory remarks. Moreover, Casso's proof does not even establish the truth of Borman's testimony. That another person has made a statement, even under oath, simply does not establish its truth as a matter of law. Casso's proof merely goes to his own state of mind, not the truth of what he said.

### Actual Malice

Casso next contends that even if the statements in question are facts and not opinions, and even if he has not established their truth, he is still entitled to summary judgment because, as a matter of law, he did not make the statements with actual malice. Since Brand must prove actual malice in order to prevail, Casso is entitled to a summary judgment as to any statement on which he can negate actual malice as a matter of law.

■ Casso first urges that a more liberal summary judgment standard in public figure defamation actions is required by the United States Constitution. Even if a complainant has no substantial hope of eventual vindication, the mere threat or act of filing and prosecuting a lawsuit will, he suggests, have a chilling effect on both present and future exercise of the constitutionally protected right of free speech. Casso claims that the Supreme Court recognized this constitutional component to summary judgments in public figure def-

amation cases in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In *Liberty Lobby*, the Supreme Court held that "in ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden." 477 U.S. at 254, 106 S.Ct. at 2513, 91 L.Ed.2d at 215. Thus, "the appropriate summary judgment question will be whether the evidence in the record could support a reasonable jury finding either that the plaintiff has shown actual malice by clear and convincing evidence or that the plaintiff has not." 477 U.S. at 255–56, 106 S.Ct. at 2514, 91 L.Ed.2d at 216.

Brand counters that *Liberty Lobby* was based not on constitutional requirements, but merely on federal procedure. We agree. The Court was not granting "special procedural protections to defendants" because of the type of case involved, 477 U.S. at 256 n. 7, 106 S.Ct. at 2514 n. 7, 91 L.Ed.2d at 216 n. 7 (quoting *Calder v. Jones*, 465 U.S. 783, 790–91, 104 S.Ct. 1482, 1487–88, 79 L.Ed.2d 804, 813 (1984)), but merely applying general federal summary judgment rules to the particular circumstances of a public figure defamation case. As Justice Brennan observed in his dissent:

> The Court's holding today is not, of course, confined in its application to First Amendment cases.... It changes summary judgment procedure for *all* litigants, regardless of the substantive nature of the underlying litigation.

477 U.S. at 257–58 n. 1, 106 S.Ct. at 2515 n. 1, 91 L.Ed.2d at 217–18 n. 1 (Brennan, J., dissenting) (emphasis original).

Summary judgments in federal courts are based on different assumptions, with

---

3. Both Casso and Brand treat truth as an affirmative defense. Under the *New York Times* standard, however, the plaintiff must prove that the statements are false as part of his case in chief. *Gertz*, 418 U.S. at 342, 94 S.Ct. at 3008, 41 L.Ed.2d at 807; *New York Times*, 376 U.S. at 279–80, 84 S.Ct. at 726, 11 L.Ed.2d at 706–07. This distinction makes no practical difference in a summary judgment proceeding, where a defendant movant bears the burden in either event, but it is of considerable importance in a

trial on the merits. We need not at this time decide whether every plaintiff in any defamation case, regardless of his status or that of the defendant, must prove falsity as an element of his cause of action. *See generally Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 106 S.Ct. 1558, 89 L.Ed.2d 783 (1986) (private-figure plaintiffs are constitutionally required by the First Amendment to prove falsity when suing media defendants for defamation).

different purposes, than summary judgments in Texas. In the federal system, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.' Fed.Rule.Civ.Proc. 1." *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265, 276 (1986). Thus, federal courts place responsibilities on both movants and non-movants in the summary judgment process. In *Celotex,* decided on the same day as *Liberty Lobby,* the plurality opinion of the Supreme Court said:

> Under [Fed.R.Civ.P.] 56c, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

477 U.S. at 322, 106 S.Ct. at 2552–53, 91 L.Ed.2d at 273.

Texas law, of course, is different. While the language of our rule is similar, our interpretation of that language is not. We use summary judgments merely "to eliminate patently unmeritorious claims and untenable defenses," *City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d 671, 678 n. 5 (Tex.1979), and we never shift the burden of proof to the non-movant unless and until the movant has "establish[ed] his entitlement to a summary judgment on the issues expressly presented to the trial court by conclusively proving all essential elements of his cause of action or defense as a matter of law." *Id.* at 678.

*Liberty Lobby* and *Celotex* involve only the application of federal procedural law. Nothing in either decision compels us to abandon our established summary judgment procedure either generally or in the particular facts of this case.

Casso next urges that the Texas Constitution requires a different summary judgment standard in defamation cases. Again, we disagree. While we have recently recognized the possibility that our state free speech guarantee may be broader than the corresponding federal guarantee, *see O'Quinn v. State Bar,* 763 S.W.2d 397, 402 (Tex.1988), that broader protection, if any, cannot come at the expense of a defamation claimant's right to redress. Unlike the United States Constitution, which contains no explicit guarantee of the right to sue for defamation, the Texas Constitution expressly protects the bringing of reputational torts. In the guarantee of free speech itself, our Constitution states:

> Every person shall be at liberty to speak, write or publish his opinions on any subject, *being responsible for the abuse of that privilege....*

Tex. Const. art. I, § 8 (emphasis added). And in guaranteeing access to the courts, our Constitution further provides:

> All courts shall be open, and every person for an injury done him, in his lands, goods, person or *reputation,* shall have remedy by due course of law.

Tex. Const. art. I, § 13 (emphasis added).

These provisions must be given effect. While we may on occasion grant protections to defamation defendants beyond those required in the United States Constitution, as we have today in requiring public official and public figure plaintiffs to prove their actions against private defendants under the *New York Times* standard, we have based those decisions on common law, not constitutional, grounds. We find nothing in the Texas Constitution which compels a different summary judgment procedure for public figure defamation cases.

Moreover, we see no overriding policy reasons for modifying our summary judgment standards under the common law. While some commentators have urged us to adopt the current federal approach to summary judgments generally, *e.g.,* Hittner & Liberato, *Summary Judgments in*

*Texas,* 20 St. Mary's L.J. 243, 303–05 (1989), we believe our own procedure eliminates patently unmeritorious cases while giving due regard for the right to a jury determination of disputed fact questions. Tex. Const. art. I, § 15; art. V, § 10. And although we recognize the constitutional considerations for encouraging free and untrammeled expression on matters of public concern or interest, we believe the rigorous burden of the *New York Times* standard adequately protects those interests. *See Moffatt v. Brown,* 751 P.2d 939, 942–43 (Alaska 1988); *Dairy Stores, Inc. v. Sentinel Publishing Co.,* 104 N.J. 125, 156–57, 516 A.2d 220, 236 (1986). We respectfully disagree with those jurisdictions that have applied *Liberty Lobby* to their own summary judgment practice, whether as a matter of constitutional law or state procedure.[4]

Interestingly, Casso never attempts to support the summary judgment under current Texas law. This is understandable in light of two recent decisions of this court. In *Beaumont Enterprise & Journal v. Smith,* 687 S.W.2d 729 (Tex.1985), the defendants offered as summary judgment proof the reporter's affidavit that she believed the contents of her article to be factually accurate and true. The trial court granted summary judgment, but the court of appeals reversed. This court affirmed, stating that the reporter's affidavit "as to her own state of mind is not evidence that could have been readily controverted; therefore it is not evidence that will support a summary judgment." *Id.* at 730. The following year, we reaffirmed *Beaumont Enterprise* in *Bessent v. Times–Herald Printing Co.,* 709 S.W.2d 635 (Tex.1986). In that case, the defendant supported its motion for summary judg-

ment with an affidavit from its vice-president, stating that the allegedly defamatory article was adopted from a UPI release. The affidavit set forth that UPI articles were routinely used "without substantive changes," and that UPI was a "reliable, accurate, and prestigious news service with a world-wide reputation for truth and accuracy." *Id.* at 635. The trial court granted summary judgment and the court of appeals affirmed, but we reversed, stating:

> [Defendant's] affidavit on the reliability of the UPI wire service is very similar to the affidavit this court considered in *Beaumont Enterprise.* . . . Both newspapers' affidavits were by interested party witnesses; each asserted the reliability and accuracy of admittedly false statements; and the assertions in each case were based on knowledge of facts under the control of the newspapers' employees. These affidavits cannot be readily controverted. As in *Beaumont Enterprise* . . . , we hold that [defendant's] affidavit made to establish the absence of malice will not support a summary judgment.

*Id.* at 636.

Casso's affidavit, likewise, is similar to the affidavits in *Beaumont Enterprise* and *Bessent.* Under those decisions, summary judgment is virtually impossible to obtain in any action for defamation. If we follow them, as did the court of appeals, 742 S.W.2d at 727–29, we, too, must remand to the district court for a trial on the merits.

We are convinced that would be a mistake. Even in those states which apply traditional summary judgment standards to defamation cases, there is a recognition that courts must give "careful judicial at-

---

**4.** *Williams v. Marcum,* 519 So.2d 473, 477 (Ala. 1987); *Dombey v. Phoenix Newspapers, Inc.,* 150 Ariz. 476, 485–91, 724 P.2d 562, 572–74 (1986); *Drew v. KATV Television, Inc.,* 293 Ark. 555, 557, 739 S.W.2d 680, 681–82 (1987); *Planned Protective Serv. v. Gorton,* 200 Cal.App.3d 1, 8, 245 Cal.Rptr. 790, 793 (1988); *Reed v. Northwestern Publishing Co.,* 124 Ill.2d 495, 512, 125 Ill.Dec. 316, 324, 530 N.E.2d 474, 482 (1988); *Behr v. Meredith Corp.,* 414 N.W.2d 339, 341 (Iowa 1987); *Bussie v. Lowenthal,* 535 So.2d 378, 380 n. 2 (La.1988); *Haygood v. First Nat'l Bank,* 517 So.2d 553, 555–56 (Miss.1987); *Prof-*

*fitt v. Greensboro News & Record, Inc.,* 91 N.C. App. 218, 221, 371 S.E.2d 292, 293–94 (1988); *Varanese v. Gall,* 35 Ohio St.3d 78, 81, 518 N.E.2d 1177, 1179–81, *cert. denied,* — U.S. —, 108 S.Ct. 2849, 101 L.Ed.2d 886 (1988); *Guntheroth v. Rodaway,* 107 Wash.2d 170, 175–76, 727 P.2d 982, 985 (1986); *Long v. Egnor,* 346 S.E.2d 778, 785–86 (W.Va.1986); *O.C.A.W. v. Sinclair Oil Corp.,* 748 P.2d 283, 288–89 (Wyo.1987), *cert. denied,* — U.S. —, 109 S.Ct. 65, 102 L.Ed.2d 42 (1988). *See also Della–Donna v. Gore Newspapers Co.,* 510 So.2d 984 (Fla.Dist.Ct.App.1987) (Anstead, J., specially concurring).

tention to summary judgment motions in the context of the first amendment." *Moffatt,* 751 P.2d at 946. As the New Jersey Supreme Court explained:

> The dispositive question, then, is whether there is a genuine issue that any of the defendants displayed reckless disregard in publishing the two factual statements. Because the issue implicates the defendants' state of mind, we approach it with due respect for the difficulty of granting summary judgment. Nonetheless, we recognize also that summary judgment practice is particularly well-suited for the determination of libel actions, the fear of which can inhibit comment on matters of public concern.

*Dairy Stores,* 104 N.J. at 157, 516 A.2d at 236 (citation omitted).

While we agree with the courts of Alaska and New Jersey that the Constitution does not mandate preferential treatment for the summary judgment motions of defamation defendants, we share their concern that summary judgment procedures not operate to discourage constitutional rights. In our opinion, the approach of *Beaumont Enterprise* and *Bessent,* far from being sensitive to free speech and free press concerns, actually treats defamation defendants more harshly than movants for summary judgment in most other types of cases. While this may not be unconstitutional, it is certainly insensitive to the vital liberty issues involved.

Our summary judgment rule permits the granting of a summary judgment on the basis of uncontroverted testimonial evidence of an interested witness if that evidence "is clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted." Tex.R.Civ.P. 166a(c). The difficulty arises in the application of the final prong. If read too literally, as in *Beaumont Enterprise* and *Bessent,* summary judgment becomes more difficult to obtain as the plaintiff's opportu-

nity to prevail on the merits becomes more remote. Those actions with the least chance of success are the most likely to be accorded a full trial. This stands the purpose of summary judgment on its head.

We believe that "could have been readily controverted" does not simply mean that the movant's summary judgment proof could have been easily and conveniently rebutted.[5] Rather, it means that testimony at issue is of a nature which can be effectively countered by opposing evidence. If the credibility of the affiant or deponent is likely to be a dispositive factor in the resolution of the case, then summary judgment is inappropriate. On the other hand, if the non-movant must, in all likelihood, come forth with independent evidence to prevail, then summary judgment may well be proper in the absence of such controverting proof.

To prevail at trial, a plaintiff must show that defendant made a false and defamatory statement of fact "with knowledge that it was false or with reckless disregard of whether it was false or not." *New York Times Co. v. Sullivan,* 376 U.S. at 279–80, 84 S.Ct. at 726, 11 L.Ed.2d at 706. Actual malice, as used in defamation cases, is a term of art which is separate and distinct from traditional common law malice. It does not include ill will, spite or evil motive, but rather requires "sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." *St. Amant v. Thompson,* 390 U.S. 727, 731, 88 S.Ct. 1323, 1325, 20 L.Ed.2d 262, 267 (1968). It is not enough for the jury to disbelieve defendant's testimony. Rather, the plaintiff must offer clear and convincing affirmative proof to support a recovery. See *Liberty Lobby,* 477 U.S. at 255–56, 106 S.Ct. at 2514, 91 L.Ed.2d at 216. While it is conceivable that a defendant's trial testimony, under the rigors of cross-examination, could provide that requisite

---

**5.** The "could have been readily controverted" standard was first added to rule 166a by the 1978 amendments to the Texas Rules of Civil Procedure. *See* Texas Supreme Court, Order of July 11, 1977 (reprinted in 40 Tex.B.J. 709, 711– 12 (1977)). It has no precise antecedent in Texas case law, *see Lewisville State Bank v. Blanton,* 525 S.W.2d 696 (Tex.1975), and is apparently unique to Texas practice.

proof, it is more likely that plaintiff will have to secure that evidence elsewhere. If he cannot secure it during the discovery process, he is unlikely to stumble on to it at trial.

In all other types of cases, our courts do not ordinarily deny otherwise appropriate summary judgment motions because of a subjective determination that the movant's proof cannot be readily controverted. Neither should they do in a defamation case involving a public official or public figure. We therefore overrule our decisions in *Beaumont Enterprise* and *Bessent.*

■ Turning finally to the facts of this case, we hold that Casso presented sufficient proof to support the summary judgment as to all the statements in the advertisements about Brand's destruction of the tapes. Casso's affidavit establishes as a matter of law that he did not believe the allegations were false and did not act with reckless disregard as to their truth or falsity in repeating those allegations in his campaign advertising. As Brand presented no controverting proof, summary judgment as to those statements was proper.

However, Casso has failed to negate actual malice as to the statements attributed to him in the magazine article. His affidavit states:

> [I]t is not my fault what THE NATION MAGAZINE and its writers stated in their article. That is another case, and I understand that a judgment has already been rendered against Brand.
>
> At no time did I ever act with malice toward Othal Brand, and never did I make an untrue statement knowingly. I regret that he is such a sensitive person, but all I did was to make logical and justified inference from facts known to me personally.

This proof will not sustain a summary judgment under our standards. If it attempts to state that Casso did not actually make the statements, it fails because it is not sufficiently specific. If it attempts to assert the defense of collateral estoppel or res judicata, it fails because it provides no proof of such other judgment or its legal effect. Finally, if it attempts to negate actual malice, it provides no information as to Casso's knowledge that the statements were not false or were not made with reckless disregard to their truth or falsity. In short, this proof meets none of the tests of rule 166a. It is not clear, direct, or positive, it is not free from contradictions and inconsistencies, and it could not have been readily controverted. Tex.R.Civ.P. 166a. We do not say that Casso could not meet his summary judgment burden as to this part of the case; we only say that, on this record, he has failed to do so.

Accordingly, we affirm the judgment of the court of appeals and return to the trial court for further proceedings that portion of the case involving Casso's alleged statement to *The Nation* magazine. We reverse the judgment of the court of appeals as to the radio ads and return this portion of the case to the trial court for entry of partial summary judgment.[6]

SPEARS, COOK, HIGHTOWER, and DOGGETT, JJ., join in this opinion.

GONZALEZ and MAUZY, JJ., file a concurring and dissenting opinion.

PHILLIPS, C.J., files a dissenting opinion in which COOK, J., joins.

Ray, J., files a dissenting opinion.

Hecht, J., not sitting.

GONZALEZ, Justice, concurring and dissenting.

I am disappointed that the court has chosen to merely pay lip service to first amendment values and has decided not to join the growing number of states that have revised their summary judgment standards to give greater scrutiny to public figure and public official defamation cases. I would not only overrule *Bessent v. Times–Herald Printing Co.,* 709 S.W.2d 635 (Tex.1986) and *Beaumont Enterprise*

---

**6.** The author of the opinion disagrees with this disposition and notes his reasons in a separate

dissenting opinion.

*& Journal v. Smith,* 687 S.W.2d 729 (Tex. 1985), but would give vitality to the free speech values embodied in our Texas Constitution by applying a stricter summary judgment standard in these types of defamation cases.

I do not join the court's opinion for two reasons. First, the court overlooks the fact that the statements in question were made in the heat of a political campaign. Second, because Casso asserted that the common law fair comment privilege protected the criticisms he leveled at Brand, Casso effectively raised the issue that these comments were constitutionally protected opinion. I would reverse the judgment of the court of appeals and hold that the trial court properly granted Casso's motion for summary judgment.

In early 1981, Brand, the incumbent mayor, was embroiled in an intense campaign for reelection. During the course of the campaign, a police brutality case involving the City of McAllen was being tried in federal district court in Brownsville. This case received extensive publicity because of the release of videotapes during the trial showing beatings of prisoners by McAllen police officers. It is in this context that Casso said that Brand condoned acts of brutality by the McAllen police, charged that Brand ordered the distruction of the tapes, called Brand a "barbarian" and an "ayatollah," and criticized him for ruling the City with "an iron fist." Brand filed this suit in July, 1981 and the case essentially laid dormant until the summary judgment hearing in February, 1986.

In his motion for summary judgment, Casso asserted, among other things, that:

(1) the statements in question ... were justified by the occasion and were fair comment and criticism and were in the public interest;

(2) he acted in good faith, without malice; and with good and reasonable cause to believe that the contents of the statements were true.

In support of his motion for summary judgment, Casso presented summary judgment evidence consisting of his affidavit in which he stated that:

(a) he was a medical doctor in the City of McAllen;

(b) the main issue in the campaign was citizens' complaints of police brutality by members of the McAllen Police Department;

(c) in the police brutality case, Captain Borman, a senior captain on the McAllen Police Department, testified under oath that he was given an order by Brand, through the Chief of Police, to erase the videotapes; and

(d) at no time did he ever act with malice towards Brand and never knowingly made an untrue statement.

A copy of Captain Borman's testimony was attached to the affidavit. Brand filed a response but he did not present any summary judgment evidence even though he had almost five years to discover evidence controverting Casso's allegations.

The trial court granted the motion for summary judgment without specifying the ground or grounds on which it relied. The court of appeals, relying on this court's decisions in *Bessent* and *Beaumont Enterprise* held that Casso's summary judgment proof did not negate actual malice, one of the elements of Brand's cause of action. Thus, the court of appeals reversed the judgment of the trial court and remanded the cause for trial on the merits. When a trial court's order granting summary judgment does not specify the ground or grounds relied on for its ruling, summary judgment will be affirmed on appeal if any of the theories advanced are meritorious. *See Borg-Warner Acceptance Corp. v. C.I.T. Corp.,* 679 S.W.2d 140, 142 (Tex.App. —Amarillo 1984, writ ref'd n.r.e.). I will now discuss whether any of the grounds asserted by Casso support the summary judgment.

### Fact or Opinion

In these types of cases, we need to distinguish between opinions and statements of fact. Derogatory statements of opinion are exempted from libel by the common law and the United States and Texas Constitutions. False statements of fact are

not so exempted. To sustain a defamation cause of action, a public official or public figure must prove that the defendant (1) published a false statement of fact; (2) that was defamatory concerning the public official or public figure; and (3) that the statement was made with actual malice. *New York Times Co. v. Sullivan,* 376 U.S. 254, 279–80, 84 S.Ct. 710, 725–26, 11 L.Ed.2d 686 (1964); *Channel 4, KGBT v. Briggs,* 759 S.W.2d 939, 941 (Tex.1988).[1]

As previously noted, all assertions of opinion are protected by the first amendment of the United States Constitution and article I, section 8 of the Texas Constitution. *See Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 339–40, 94 S.Ct. 2997, 3006–07, 41 L.Ed.2d 789 (1974); *O'Quinn v. State Bar,* 763 S.W.2d 397, 402 (Tex.1988); *El Paso Times, Inc. v. Kerr,* 706 S.W.2d 797, 798 (Tex.App.—El Paso 1986, writ ref'd n.r.e.), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 761 (1987).

The core values of the first amendment reflect a "recognition of the fundamental importance of the free flow of ideas and opinions on matters of public interest and concern." *Hustler Magazine v. Falwell,* 485 U.S. 46, ——, 108 S.Ct. 876, 879, 99 L.Ed.2d 41, 49 (1988).

In *Gertz,* the Supreme Court stated:

> Under the First Amendment there is no such thing as a false idea. However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas. But there is no constitutional value in false statements of fact. Neither the intentional lie nor the careless error materially advances society's interest in "uninhibited, robust, and wide-open debate on public issues."

*Gertz,* 418 U.S. at 339–40, 94 S.Ct. at 3006–07 (quoting *New York Times,* 376 U.S. at 270, 84 S.Ct. at 721). By this statement, *Gertz* elevated to constitutional principle the distinction between fact and opinion. *Ollman v. Evans,* 750 F.2d 970, 975 (D.C.

Cir.1984). Thus, whether the publication is a protected expression of opinion or an actionable statement of fact is a question of law for the court. The *Ollman* court devised a four factor test to facilitate this distinction. *Id.* at 979; *Kerr,* 706 S.W.2d at 798. These factors will be discussed and applied later in this opinion.

Casso did not specifically argue before the trial court that the statements in question were mere statements of opinion and therefore not actionable. He did, however, assert that the statements came within the purview of the common law fair comment privilege which is applicable only to opinions. Thus, in effect, Casso raised and preserved the argument that the statements in question were mere statements of opinion.

### Fair Comment

Under common law, there exists a qualified privilege (defense) for *opinions* in the form of fair comment. The privilege is qualified because after it is established by the defendant, a showing by the plaintiff of actual malice destroys the privilege. Criticism regarding the official acts or conduct of public officials and candidates for public office, or their qualifications for office, is privileged and not libelous. *See Rawlins v. McKee,* 327 S.W.2d 633, 637 (Tex.Civ.App. —Texarkana 1959, writ ref'd n.r.e.). Whatever pertains to the qualification of a candidate for public office is certainly a legitimate subject for discussion and comment in a political campaign.

The fair comment privilege has been codified in part with respect to the press in our libel statutes. *See* Tex.Civ.Prac. & Rem.Code Ann. § 73.002 (Vernon 1986). However, this codification does not affect the existence of common law defenses to libel. Tex.Civ.Prac. & Rem.Code Ann. § 73.006 (Vernon 1986). Thus, after *Gertz,* the common law fair comment privilege continues to have vitality, at least insofar as the assertion of it preserves the point that the alleged defamatory statements are

---

1. It is odd that the plurality does not cite *Briggs,* this court's most recent writing in this area of law.

constitutionally protected expressions of opinion. *See Prosser and Keeton on the Law of Torts*, § 115.5 (W. Keeton 5th ed. 1984).

The better practice is for litigants to specifically assert that a particular statement is not actionable because it is a statement of opinion, if this is their defense. Nevertheless, because the fair comment privilege protects only statements of opinion, I conclude that the issue of whether the word "barbarian" was an opinion was preserved for our review, as were the statements that Brand ruled McAllen like an "ayatollah," that his leadership style was to rule the City with an "iron fist," and that Brand tried to "make a deal which would have shut ... hospital doors to [the] ... poor...."[2] I would apply the four *Ollman* factors previously mentioned to determine whether these statements were of fact or of opinion.

### The Ollman Analysis

The first factor requires a court to analyze the common usage or meaning of the allegedly defamatory words themselves to determine whether the statements have precise meaning giving rise to clear factual implications. *Ollman*, 750 F.2d at 979–80. "Loosely definable" or "variously interpretable" statements cannot in most contexts support an action for defamation. *Id.* at 980. The second *Ollman* factor requires a court to consider the degree to which the statements are verifiable. *Id.* at 981. A reader cannot rationally view an unverifiable statement as conveying actual facts. The third *Ollman* factor is to consider the linguistic context of the allegedly defamatory statements. *Id.* at 982. The distinction between fact and opinion can be made only in context. The fourth *Ollman* factor directs a court to examine the social context in which the statements occur. Courts should fully take into account the different social conventions or customs in different types of writing (or settings). *Id.* at 984.

Under *Ollman*, the statements that Brand was a "barbarian," ruled McAllen like an "ayatollah," and that his administration was an "iron fist" are unmistakably "loosely definable" and "variously interpretable" statements of opinion made in the heat of a political campaign. The statements are obviously unverifiable. Thus, as a matter of law, these are statements of opinion.

Finally, I turn to the more difficult question of whether the following statement published in *The Nation* magazine is actionable:

[A]ccording to Casso, "Mr. Brand tried to make a deal which would have shut the hospital doors to our city's poor, without even notifying the citizens of the plan. Apparently, he hadn't bothered to look at the City charter."

Under *Ollman*, this statement is closer to fact than opinion. It was published *after* the campaign had ended and is considerably more verifiable than the previously mentioned statements. Nevertheless, as will be discussed in the next section, summary judgment is still proper because Brand failed to satisfy his burden of proof on the issue of malice under either the current standard or the procedure that I propose.

### Actual Malice

Casso argues that even if he failed to prove that the statements were true, summary judgment should have been sustained because Brand failed to prove by clear and convincing evidence that malice existed. The Supreme Court has declared that the first amendment "prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice'...." *New York Times*, 376 U.S. at 279–80, 84 S.Ct. at 725–26, *quoted in Briggs*, 759 S.W.2d at 941. The *New York Times* standard was later extended to libel suits brought by public figures as well. *Curtis Publishing Co. v.*

---

**2.** *See* Robertson, *Defamation and the First Amendment: In Praise of Gertz v. Robert Welch, Inc.*, 54 Tex.L.Rev. 199, 201 & n. 17 (1976). *See* *also* Restatement (Second) of Torts, § 566, comment a (1977).

*Butts*, 388 U.S. 130, 164, 87 S.Ct. 1975, 1996, 18 L.Ed.2d 1094 (1967) (Warren, C.J., concurring). In the present case, it is undisputed that Brand is a public official. Thus, as an element of his cause of action, Brand had the burden at trial of proving by clear and convincing evidence that Casso acted with actual malice. *See Bose Corp. v. Consumers Union of United States, Inc.*, 466 U.S. 485, 511 n. 30, 104 S.Ct. 1949, 1965 n. 30, 80 L.Ed.2d 502 (1984); *Gertz*, 418 U.S. at 342, 94 S.Ct. at 3008. Actual malice is the making of a statement with knowledge that it is false, or with reckless disregard of whether it is true. *Gertz*, 418 U.S. at 328, 94 S.Ct. at 3001. "Reckless disregard" is defined as a high degree of awareness of probable falsity, for proof of which the plaintiff must present "sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." *St. Amant v. Thompson*, 390 U.S. 727, 731, 88 S.Ct. 1323, 1325, 20 L.Ed.2d 262 (1968). An error in judgment is not enough. *See Time, Inc. v. Pape*, 401 U.S. 279, 290, 91 S.Ct. 633, 640, 28 L.Ed.2d 45 (1971); *Briggs*, 759 S.W.2d at 941.

Thus, the question presented in this case is: must a public official, at the summary judgment stage, prove by clear and convincing evidence that the defendant made false statements or entertained serious doubts as to the truth of the statements in question? Stated another way, is the constitutional requirement that a public official prove the existence of actual malice by clear and convincing evidence in a defamation action applicable only *at trial*, or is this a relevant and necessary inquiry at the *summary judgment* stage as well? The Supreme Court arguably answered this question when it said:

> When determining if a genuine factual issue as to actual malice exists in a libel suit brought by a public figure, a trial court must bear in mind the actual quantum and quality of proof necessary to support liability under *New York Times*. For example, *there is no genuine issue if the evidence presented in the opposing affidavits is of insufficient caliber or quality to allow a rational fact find-*

*er to find actual malice by clear and convincing evidence....* In sum, we conclude that the determination of whether a given factual dispute requires submission to a jury must be guided by the *substantive* evidentiary standards that apply to the case. This is true at both the directed verdict and summary judgment stages.

*Anderson v. Liberty Lobby*, 477 U.S. 242, 254–55, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986) (emphasis added). However, there exists a difference of opinion as to whether *Liberty Lobby* was based on first amendment substantive law or merely on federal procedure. *See Briggs*, 759 S.W.2d at 943–44 (Gonzalez, J., concurring).

In the present case, the court of appeals did not discuss or consider *Liberty Lobby*. Instead, the court of appeals applied traditional Texas summary judgment standards formulated prior to *Liberty Lobby* which are tilted in favor of defamation plaintiffs and place the burden on the defendants at summary judgment to show absence of actual malice. *Beaumont Enterprise*, 687 S.W.2d at 730; *See also Bessent*, 709 S.W.2d at 636.

In *Beaumont Enterprise* and *Bessent*, we restricted the defendant's ability to satisfy this burden by holding that affidavits made to establish absence of malice are not evidence that will support a summary judgment. Thus, in Texas, obtaining a summary judgment on the basis of no actual malice has been next to impossible. While I join in the court's decision to overrule these two cases, I do not think the court goes far enough. I am concerned that today's decision may still permit libel plaintiffs to go forward with their case even if they do not have clear and convincing evidence of actual malice. If this is so, defendants may still have to put up not only with the costs but also the burdens of protracted litigation in order to vindicate constitutionally guaranteed rights. Our current system fails them because it does not provide an effective system to filter out meritless cases without a full blown trial. The threat of being put to the defense of a lawsuit, however frivolous, in order to vin-

dicate rights of free speech has a chilling effect on "the principle that debate on public issues ... be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." *Moffatt v. Brown*, 751 P.2d 939, 946 (Alaska 1988) (quoting *New York Times*, 376 U.S. at 270, 84 S.Ct. at 721).

Therefore, to lessen self-censorship pressure, I would view summary judgment evidence with no interpretive bias in favor of either side and allocate the burden of proof and persuasion so as to minimize the self-censorship effects of defamation litigation. This is not a novel or a new idea. A growing number of our sister states have adopted a special summary judgment procedure in defamation suits brought by public figures or public officials. *See, e.g., Dombey v. Phoenix Newspapers, Inc.*, 150 Ariz. 476, 485–91, 724 P.2d 562, 571–76 (1986); *Reader's Digest Ass'n v. Superior Court*, 37 Cal.3d 244, 251–52, 208 Cal.Rptr. 137, 140–41, 690 P.2d 610, 613–14 (1984); *Planned Protective Serv., Inc. v. Gorton*, 200 Cal.App.3d 1, 8, 245 Cal.Rptr. 790, 793 (1988); *Miller v. Nestande*, 192 Cal. App.3d 191, 196–98, 237 Cal.Rptr. 359, 361–62 (1987); *DiLeo v. Koltnow*, 200 Colo. 119, 125, 613 P.2d 318, 323 (1980); *Reed v. Northwestern Publishing Co.*, 124 Ill.2d 495, 512, 530 N.E.2d 474, 481–82 (1988); *Bussie v. Lowenthal*, 535 So.2d 378, 380 n. 2 (La.1988); *Hudak v. Fox*, 215 N.J.Super. 233, 238–39, 521 A.2d 889, 891–92 (1987); *Scacchetti v. Gannett Co.*, 123 A.D.2d 497, 498, 507 N.Y.S.2d 337, 339 (1986); *Varanese v. Gall*, 35 Ohio St.3d 78, 81, 518 N.E.2d 1177, 1181, *cert. denied*, — U.S. —, 108 S.Ct. 2849, 101 L.Ed.2d 886 (1988); *Margoles v. Hubbart*, 111 Wash.2d 195, 200, 760 P.2d 324, 326–27 (1988); *Herron v. Tribune Publishing Co.*, 108 Wash.2d 162, 170, 736 P.2d 249, 255–56 (1987); *Long v. Egnor*, 346 S.E.2d 778, 785–86 (W.Va.1986); *Adams v. Frontier Broadcasting Co.*, 555 P.2d 556, 562 (Wyo. 1976). This heightened burden to prove actual malice by clear and convincing evidence at the summary judgment stage, while consistent with the spirit of *Liberty*

*Lobby,* is based on separate and independent state grounds.

### Texas Constitution

Article I, section 8 of the Texas Constitution provides:

> Every person shall be at liberty to speak, write or publish his opinions on any subject, being responsible for the abuse of that privilege; and no law shall ever be passed curtailing the liberty of speech or of the press.

The United States Bill of Rights states: "Congress shall make no law ... abridging the freedom of speech or of the press...." U.S. Const. amend. I. Arguably, the rights of free speech and press guaranteed by our Texas Constitution are more extensive than those guaranteed by the United States Constitution. *See O'Quinn*, 763 S.W.2d at 402; *see also Briggs*, 759 S.W.2d at 944. (Gonzalez, J., concurring). The Texas Constitution also provides that:

> All courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of the law.

Tex. Const. art. I, § 13.

Thus, we have competing values in the Texas Constitution: freedom of speech on the one hand; the intent to protect one's reputation on the other. Given our state commitment to the principle that debate on public issues be uninhibited, robust and wide-open, the free speech values embodied in the Texas Constitution have the strongest claim for special procedural safeguards and mandate that we apply a stricter standard in public official or public figure defamation actions. *See Ex Parte Tucker*, 110 Tex. 335, 220 S.W. 75, 76 (1920).

Thus, I would modify our current procedure in these types of cases. I would continue the current practice and place the initial burden at summary judgment on the defendant to negate the presence of actual malice. This burden can now be satisfied by the defendant's own affidavit, as well as other forms of summary judgment evidence authorized in Texas. *See* Tex.R. Civ.P. 166a. Once the defendant has met

this initial burden, I would modify our current practice and hold that the burden of production and persuasion shifts to the plaintiff to show the existence of actual malice by clear and convincing evidence that can ultimately be introduced to the trier of fact. *See* Hittner & Liberato, *Summary Judgments in Texas,* 20 St. Mary's L.J. 243, 304 (1989). *See generally Sakowitz, Inc. v. Steck,* 669 S.W.2d 105, 107 (Tex.1984). If the plaintiff fails to meet this burden after being given an ample opportunity to conduct discovery, the trial court should sustain the defendant's motion for summary judgment.

In the present case, Casso submitted an affidavit with his motion for summary judgment which stated, in relevant part, "At no time did I ever act with malice towards ... Brand, and never did I make an untrue statement knowingly." Thus, Casso met his initial burden of negating the presence of actual malice. The burden then shifted to Brand to show the existence of malice by clear and convincing evidence. This he failed to do.

In *Briggs,* a public figure plaintiff filed a libel suit which remained dormant for approximately two and one-half years. *Briggs,* 759 S.W.2d at 942. All discovery in the case was conducted by the defendants. The plaintiff had ample opportunity to conduct discovery, but apparently chose not to do so. Therefore, this court held that summary judgment in favor of the defendants was proper.

Similarly, Brand had ample opportunity (almost five years) to conduct his own discovery and offer controverting evidence, if any, but chose not to do so. Because Brand failed to rebut Casso's allegation of lack of malice in an attempt to raise a fact issue, we have the identical situation presented here as in *Briggs* and we should reach the same result.

Under either *Briggs* or the stricter summary judgment standard I propose, the trial court was correct in rendering summary judgment in favor of Casso.

For these reasons, I dissent.

MAUZY, Justice, concurring and dissenting.

I respectfully dissent. The majority today ignores stare decisis and cavalierly overrules the court's recent decisions in *Bessent v. Times–Herald Printing Co.,* 709 S.W.2d 635 (Tex.1986), and *Beaumont Enterprise & Journal v. Smith,* 687 S.W.2d 729 (Tex.1985). While stare decisis should remain a flexible doctrine, I see no compelling reason to overturn established Texas summary judgment law in this area of the law.

Nonetheless, the trial court was correct in rendering summary judgment for Casso. For almost five years, Brand had an opportunity to conduct his own discovery to rebut Casso's allegations of lack of malice in an attempt to raise a fact issue but chose not to do so. Under *Channel 4, KGBT v. Briggs,* 759 S.W.2d 939 (Tex.1988), considering the evidence presented by the parties on the issue of actual malice, the trial court was correct in rendering summary judgment for Casso. For this reason, the judgment of the court of appeals should be reversed and that of the trial court should be affirmed.

PHILLIPS, Chief Justice, dissenting.

I join in all of the majority's opinion, which I authorized, except for the decision that a portion of the cause should be rendered rather than remanded to the trial court. Texas Rule of Appellate Procedure 180 allows this court to remand a cause or portion of a cause where "it shall appear that the justice of the cause demands another trial." Tex.R.App.P. 180. I believe this is such a case.

In the past, when this court announced a change in trial practice, and "the new theory or rule required new and different evidence," *Duncan v. Cessna Aircraft Co.,* 665 S.W.2d 414, 433 (Tex.1984), we have recognized that justice required a remand for further proceedings. *See L.M.B. Corp. v. Gurecky,* 501 S.W.2d 300, 303 (Tex.1973) ("these changes in the trial practice justify this court's remand of this cause ... in the interest of justice"); *Scott v. Liebman,* 404 S.W.2d 288, 294 (Tex.1966) (remand proper

"when this Court changes the rules after the case has been tried"). *See generally* Calvert, "... *In the Interest of Justice*," 4 St. Mary's L.J. 291 (1972). A remand is especially appropriate in an appeal from a summary judgment, where the parties have not yet been put to the expense of a trial and there is no opportunity for a reviewing court to apply the harmless error rule.

In preparing his response to Casso's summary judgment motion, Brand was clearly entitled to rely on our recent decisions in *Beaumont Enterprise & Journal v. Smith*, 687 S.W.2d 729 (Tex.1985), and *Bessent v. Times–Herald Printing Co.*, 709 S.W.2d 635 (Tex.1986). Both of these cases held that a defendant could not support a summary judgment in a public figure defamation case by mere state of mind evidence. As the court recognizes, Casso's affidavit was simply insufficient summary judgment evidence under existing case law. Until today, Brand was not required under

Texas law to present any evidence in order to defeat Casso's motion.

I believe the court has acted correctly in overruling *Bessent* and *Beaumont Enterprise*. In so doing, however, we should not deny Brand the opportunity to respond to Casso's proof. Parties should not be required, at the risk of having their day in court, to anticipate that the supreme court will abandon its own precedents. I would therefore remand this entire cause to the trial court for further proceedings.[1]

COOK, J., joins in this dissenting opinion.

RAY, Justice, dissenting.

I respectfully dissent. The majority today ignores stare decisis and needlessly overrules the court's recent decisions in *Bessent* and *Beaumont Enterprise*. *Bessent v. Times–Herald Printing Co.*, 709 S.W.2d 635 (Tex.1986); *Beaumont Enter-*

---

1. The position of Justice Mauzy's concurring and dissenting opinion is confusing and contradictory. While purporting to follow *Beaumont Enterprise* and *Bessent*, the opinion would nevertheless reverse the judgment of the court of appeals and render summary judgment for Casso. This judicial legerdemain is wholly unsatisfactory.

Casso's affidavit cannot support a summary judgment under *Beaumont Enterprise* and *Bessent* because it only goes to Casso's state of mind. Unlike *Channel 4, KGBT v. Briggs*, 759 S.W.2d 939 (Tex.1988), the movant here did not establish an objective, verifiable explanation of his lack of malice in making the allegedly defamatory statement. Even Casso makes no assertion that he was entitled to a summary judgment under *Beaumont Enterprise* and *Bessent*, but the concurring and dissenting opinion, without any explanation, so concludes.

An additional reason suggested by the concurring and dissenting opinion is that Brand filed no summary judgment proof. This fact is irrelevant. Under Texas law, a respondent has no duty to bring forth any controverting proof unless and until the movant has, by his own proof, established his right to a summary judgment. *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671 (Tex.1979). To relax the movant's burden simply because no response has been filed would in essence be to adopt the federal standard of summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). This is hardly consistent with the opinion's impassioned defense of stare decisis.

The opinion further supports its conclusion by alluding to Brand's "opportunity to ... attempt to raise a fact issue" during the nearly five-year pendency of this case in the trial court. The implicit suggestion is that a summary judgment should be more favorably viewed when the non-movant has had a long time to conduct discovery and prepare a case. Again, this fact has nothing to do with the standard for granting a summary judgment. The case at bar was filed on July 23, 1981, and in the ensuing years was the subject of several pre-trial and docket control conferences and at least two trial settings. Defendant first moved for summary judgment on February 7, 1986. Does this history strengthen the defendant's motion? If so, the concurring and dissenting opinion must be advocating this rule:

A movant must establish his right to summary judgment as a matter of law *unless* he is dilatory in bringing his motion, in which event his motion will be granted on lesser proof (or perhaps regardless of proof) unless the respondent comes forth and raises a fact issue.

If this standard is indeed being advocated, it has hardly been articulated with sufficient clarity to permit its application to future cases.

In short, Justice Mauzy's concurring and dissenting opinion provides the necessary vote to deprive Brand of his day in court as to most of his case without providing any cognizable rationale to support that result. If one believes that *Beaumont Enterprise* and *Bessent* should remain the law in Texas, the only course is to join with the dissent in urging the affirmance in all things of the judgment of the court of appeals.

*prise & Journal v. Smith,* 687 S.W.2d 729 (Tex.1985). While stare decisis should remain a flexible doctrine, I see no compelling reason to overturn established Texas summary judgment law.

Even if the majority feels it must overrule *Bessent* and *Beaumont Enterprise,* the very least it could do would be to remand for a new trial in the interest of justice pursuant to rule 180 of the Texas Rules of Appellate Procedure. Mayor Brand justifiably relied on our opinions in *Bessent* and *Beaumont Enterprise.* He should not be punished for failing to divine the court's future development of the law.