Woodie B. HOWELL, Appellant,

v.

THE AMERICAN PUBLISHING
CO. et al., Appellees.

No. 11–97–00290–CV.

Court of Appeals of Texas,
Eastland.

Nov. 25, 1998.

David L. Hooper, David L. Hooper & Associates, Abilene, for appellant.

G. Ben Bancroft, Big Spring, for appellee.

Before ARNOT, C.J., and DICKENSON,
J., and WRIGHT, J.

## OPINION

DICKENSON, Justice.

Woodie B. Howell filed a defamation suit against The American Publishing Co. d/b/a *Big Spring Herald*, its publisher, Charles C. Williams, and its managing editor, John H. Walker, seeking damages in the total sum of $5,000,000 plus attorney's fees and court costs. The trial court granted the defendants' motion for summary judgment that plaintiff take nothing. We affirm the summary judgment.

### Background Facts

Howell was a candidate for the nomination for Sheriff of Howard County. After Howell claimed to be the "most qualified" candidate and invited everyone to check his record, the newspaper investigated his claims and wrote a long editorial which reported the results of its investigation. Howell lost the primary election, and he subsequently filed this lawsuit, alleging libel and the intentional infliction of emotional distress. Howell alleged that the defendants had ruined his reputation and caused him to lose the election. Defendants moved for summary judgment on the grounds that the statements in their editorial were "substantially true" or at least privileged under the "freedom of the press" provisions in our constitutions. See U.S. CONST. amends. I and XIV and TEX. CONST. art. I, § 8.

### Background Facts

The editorial, which is the basis of this lawsuit, was published on the editorial page of the *Big Spring Herald* on March 10, 1996. It was written by John H. Walker, managing editor of the newspaper. Relevant portions of the lengthy editorial may be summarized as shown:

Woodie Howell, 36, who is seeking the Republican nomination for Howard County sheriff, has spent months—years, some will tell you—laying the groundwork to seek the office.

In his campaign ads, he cites his eight years experience with the Howard County Sheriff's Department.

\* \* \*

He cites moral judgment as a character strength he possesses and at the Forum said, "Anyone can look into any aspect of my life."

*But Howell might not like what is found if a long, hard look is taken ... and he might like it even less if one compares his statements with fact.*

\* \* \*

What Howell has not mentioned in any print ad, at any public appearance or at the Forum [campaign event at Howard College] is his career other than [those which had been mentioned].

Perhaps with reason.

It is a career full of job hopscotch ... a career that seems to have had its share of problems.

By his own count, he has held at least 14 jobs since the time he left the Army in 1980. [The editorial then discussed events which the newspaper's investigation indicated had occurred: at Stanton (Aug.1980–Dec.1980); at Crane (2/19/81–8/1/82); at Odessa (7/28/82–9/20/82); at Sonora (9/22/82–12/23/84); and at Blackwell (1/14/85–8/5/85).]

\* \* \*

*Just as he had problems in Stanton, Crane, Sonora and Blackwell, Howell continues to have problems.*

There currently is a criminal trespass warning posted against Howell that prohibits him from being on Canterbury property....During the current campaign, law enforcement officials have been notified of what the recipient termed to be an harassing call from Howell in response to a

letter she had written to the *Herald* and sheriff's deputies also responded to a call from Coahoma Elementary School when Howell refused to leave the premises as requested by the principal.

\* \* \*

There are two other issues of credibility that should be addressed as well. [One of them dealt with a document which Howell denied signing and which had been identified by the Abilene police officer who testified as an expert witness on signatures and who had said that it was "highly probable" the document was signed by the person who signed the comparison document which Howell had signed. The other incident dealt with whether or not Howell was planning to sue Howard County and whether or not the lawyer who said that she "anticipates filing suit on [his] behalf" was in fact representing him.] (Emphasis added)

### Summary Judgment Proof

There were two affidavits attached to the defendants' motion for summary judgment. One of the affidavits was signed by the publisher, and the other was signed by the managing editor. The affidavit by the publisher stated that he had reviewed the article by Walker which appeared on the editorial page on March 10, 1996, and "had no reason to believe that any part of the article was incorrect or untruthful." The publisher also swore that "I never have had and do not now have any personal malice or ill will toward Mr. Howell." The lengthy affidavit signed by the managing editor states in relevant part:

My name is John H. Walker....I hereby do swear that all of the facts and following statements are true.

I am and have been at all times relevant to this lawsuit the Managing Editor of the *Big Spring Herald,* a newspaper which is published and circulated in Big Spring, Howard County, Texas....This lawsuit is based upon an article which was written by me and which appeared on the editorial page of the *Big Spring Herald* on Sunday,

the 10th day of March, 1996....The article was written at the invitation of the Plaintiff, WOODIE B. HOWELL, at a public forum on March 5, 1996, for anyone to look into any aspect of his life....At the time I wrote such article, I knew that Mr. Howell was a Republican candidate for the office of Sheriff of Howard County, Texas. *I had no ill feelings toward Mr. Howell nor any reason to want to injure him. I had no malice or personal ill will toward Mr. Howell and I made what I considered to be a reasonable inquiry with respect to all of the statements made in the subject article. At the time the article was published, I entertained no serious doubts as to the truth of any statement contained in the article. I believed in good faith that all the statements in the article were substantially correct, and if there is any erroneous statement in the article, such statement was honestly made without knowledge of any error.* (Emphasis added).

The managing editor's affidavit also swears to the investigation which was made of Howell's claims before the editorial was published, and it contains a large number of exhibits to support Walker's claim that the article was based upon a good faith investigation and that his belief that the facts stated in the editorial were true.

### Controlling Law

■ The two cases which control our decision of this appeal were decided by the Supreme Court of Texas on May 10, 1989. In the first case, *Casso v. Brand*, 776 S.W.2d 551 (Tex.1989), five members of the court agreed to overrule two prior cases[1] which would have supported appellant's position on appeal. Justice Gonzalez said that the court should have gone even further. *Casso v. Brand*, supra at 560. Chief Justice Phillips wrote the majority opinion which discussed the United States Supreme Court's opinions in *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974), and

*New York Times Company v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). The majority opinion in *Casso v. Brand*, supra at 554, states:

We hold that [a public official or public figure] cannot recover [for defamation] unless he *proves by clear and convincing evidence that [the defendant] made false and defamatory statements about him with actual malice.*

The Supreme Court has held that public officials and public figures must meet the clear and convincing burden ... in order to preserve "uninhibited, robust, and wide-open" debate on public issues. *New York Times Co. v. Sullivan* [supra]. As the court explained in *Gertz:*

The *New York Times* standard defines the level of constitutional protection appropriate to the context of defamation of a public person. Those who ... are properly classed as *public figures and those who hold governmental office* may recover for injury to reputation only on clear and convincing proof that the defamatory falsehood was made *with knowledge of its falsity or with reckless disregard for the truth.*[2]

Since [plaintiff] must prove *actual malice* in order to prevail, [defendant] *is entitled to a summary judgment as to any statement on which he can negate actual malice as a matter of law.*

\* \* \*

Even if a complainant has no substantial hope of eventual vindication, the mere threat or act of filing and prosecuting a lawsuit will, he suggests, have a chilling effect on both present and future exercise of the constitutionally protected right of free speech.

\* \* \*

Actual malice, as used in defamation cases, is a term of art which is separate and distinct from traditional common law mal-

---

1. Those cases were *Bessent v. Times–Herald Printing Company,* 709 S.W.2d 635 (Tex.1986), and *Beaumont Enterprise & Journal v. Smith,* 687 S.W.2d 729 (Tex.1985).

2. The court then extended the *New York Times'* standard to defamation suits by public officials and public figures against non-media defendants.

ice. It does not include ill will, spite or evil motive, but rather requires "*sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication.*" It is not enough for the jury to disbelieve defendant's testimony. Rather, the plaintiff must offer *clear and convincing affirmative proof to support a recovery.*

\* \* \*

We therefore overrule our decisions in *Beaumont Enterprise* and *Bessent.*[3]

\* \* \*

[Defendant's] affidavit establishes as a matter of law that he did not believe the allegations were false and did not act with reckless disregard as to their truth.... As [plaintiff] presented no controverting proof, summary judgment as to those statements was proper. (Citations omitted; Emphasis added)

The other case decided by the Supreme Court of Texas on May 10, 1989, was *Carr v. Brasher*, 776 S.W.2d 567 (Tex.1989). The four justices who joined in the plurality opinion by Justice Gonzalez and the two justices who joined in the dissenting opinion by Chief Justice Phillips were in agreement with the standards announced by the court that same day in *Casso.* The plurality opinion states in *Carr:*

> To sustain a defamation cause of action, a public official or public figure must prove that the defendant (1) published a statement; (2) that was defamatory concerning the public official or public figure; and (3) *that the false statement was made with actual malice.*

\* \* \*

Actual malice is not ill will; it is the making of a statement *with knowledge that it is false, or with reckless disregard of whether it is true....* "Reckless disregard" is defined as a high degree of awareness of probable falsity, *for proof of which the plaintiff must present "sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication....*"An error in judgment is not enough.

\* \* \*

Although we chose in *Casso* not to carve out a special exception to our summary judgment practice ... the court, in overruling *Bessent* and *Beaumont Enterprise,* made it possible for defendants to obtain a summary judgment in such cases....The court in *Casso* held that because the plaintiff, Brand, "presented no controverting proof, summary judgment as to these statements was proper." (Citations omitted; Emphasis added)

*This Court's Decision*

Appellant's summary judgment proof does not controvert the relevant factual statements contained in defendants' affidavits. Appellant has not shown that any defendant knowingly made false statements about him. Appellant's summary judgment proof only shows that, after their investigation, the defendants were of the opinion that he should not be elected to any public office.

The judgment of the trial court is affirmed.