White v. Tackett

(comment: 1)

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-04-023-CV

PATRICIA WHITE APPELLANT

AND APPELLEE

V.

MARK TACKETT, IN HIS OFFICIAL  APPELLEE

CAPACITY AS STATE TROOPER AND APPELLANT

FOR THE TEXAS DEPARTMENT 

OF PUBLIC SAFETY

------------

FROM THE 235TH DISTRICT COURT OF COOKE COUNTY

------------

OPINION

------------

In this personal injury case, Patricia White was injured when a suspect fleeing from police crashed his car into hers.  White sued Mark Tackett, in his official capacity as a state trooper for the Texas Department of Public Safety, for recklessness in initiating and continuing the pursuit that led to White’s injuries.  Tackett moved for summary judgment on his affirmative defense of official immunity.  The trial court granted Tackett’s summary judgment motion, and this appeal followed.
(footnote: 1) 

In two issues, White asserts that summary judgment for Tackett is improper because Tackett’s summary judgment evidence does not establish his official immunity defense as a matter of law and because White demonstrated the existence of a material fact issue regarding whether Tackett acted in good faith.  In a single point on cross-appeal, Tackett complains that the trial court improperly sustained White’s objections to some of his summary judgment evidence.  We affirm.

In a traditional summary judgment case, the issue on appeal is whether the movant met his summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.
(footnote: 2) 
 The burden of proof is on the movant, and all doubts about the existence of a genuine issue of material fact are resolved against the movant.
(footnote: 3)  Therefore, we must view the evidence and its reasonable inferences in the light most favorable to the nonmovant.
(footnote: 4) 

In deciding whether there is a material fact issue precluding summary judgment, all conflicts in the evidence are disregarded and the evidence favorable to the nonmovant is accepted as true.
(footnote: 5) 
 Evidence that favors the movant's position will not be considered unless it is uncontroverted.
(footnote: 6) 
 If the uncontroverted evidence is from an interested witness, it does nothing more than raise a fact issue unless it is clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted.
(footnote: 7) 

A defendant is entitled to summary judgment on an affirmative defense such as official immunity if the defendant conclusively proves all the elements of the affirmative defense.
(footnote: 8) 
 To accomplish this, the defendant-movant must present summary judgment evidence that establishes each element of the affirmative defense as a matter of law.
(footnote: 9) 
 

Governmental employees are entitled to official immunity from suit arising from the performance of discretionary duties within the scope of their authority as long as they act in good faith.
(footnote: 10) 
 A law enforcement officer acts in good faith in a pursuit case if, based on the officer's perception of the facts at the time of the event, a reasonably prudent officer in the same or similar circumstances could have believed that the need to apprehend the suspect immediately outweighed a clear risk of harm to the public in continuing, rather than terminating, the pursuit.
(footnote: 11) 
 This good faith test is analogous to the abuse of discretion standard we utilize when reviewing certain trial court rulings.
(footnote: 12) 

The “could have believed” aspect of the good faith test means that in order to be entitled to summary judgment, an officer must prove that a reasonably prudent officer 
might
 have believed that the pursuit should have been continued. . . .  It does not mean that an officer has to prove that it would have been unreasonable to stop the pursuit; nor must the officer prove that all reasonably prudent officers would have continued the pursuit.
(footnote: 13)

An officer acts in bad faith only if the officer could not have reasonably reached the decision in question.
(footnote: 14) 

The “need” aspect of the good faith test refers to the urgency of the circumstances requiring police intervention, including factors such as the seriousness of the crime to which the officer is responding, whether the officer's immediate presence is necessary to apprehend a suspect or to prevent injury or loss of life, and what alternative courses of action, if any, are available to achieve a comparable result.
(footnote: 15) 
 The “risk” aspect of good faith, on the other hand, refers to the countervailing public safety concerns:  the nature and severity of harm that the officer's actions could cause (including the risk that both the fleeing suspect and the officer could injure bystanders), the likelihood that any harm would occur, and whether any risk of harm would be clear to a reasonably prudent officer.
(footnote: 16) 
 

A pursuit case requires a continuing assessment of need and risk; however, the officer is not required to affirmatively negate the existence of all circumstances or risks that did not actually exist.
(footnote: 17) 
 Further, the balancing of need versus risk does not prevent an officer from pursuing suspects for traffic violations or in residential or other populated or high traffic areas.
(footnote: 18) 

If an officer satisfies his burden of establishing good faith, the plaintiff must put on controverting evidence to avoid summary judgment.  “To controvert the officer's summary judgment proof on good faith, the plaintiff must do more than show that a reasonably prudent officer could have decided to stop the pursuit; the plaintiff must show that ‘no reasonable person in the defendant's position could have thought the facts were such that they justified defendant's acts.’”
(footnote: 19) 

The summary judgment evidence consists of: 1) the unstriken portion of Tackett’s affidavit, which was attached to Tackett’s motion
(footnote: 20) and 2) a nine-page excerpt from Tackett’s deposition testimony attached to White’s summary judgment response, which Tackett referenced, in part, in his reply to White’s response.
(footnote: 21)  This evidence shows the following:

At 5:41 p.m. on New Year’s Eve 2001, Tackett was on routine patrol duty for the Texas Department of Public Safety when he clocked a new luxury sports car traveling in excess of the 55-mile-per-hour posted speed limit.  The car was headed west on a rural farm-to-market road, FM 902, approximately five miles from the City of Gainesville, in what Tackett knew to be a high-crime area for theft and drug-related offenses.  Tackett could not identify the make or model of the vehicle and was unable to read its license plate, but he saw two men inside who did not seem to “fit the vehicle.”  Tackett observed that the driver was a Hispanic male in his 20s or early 30s who was wearing what appeared to Tackett to be “work” clothes—a red sweatshirt with no logo on it.  The passenger was a white male with long hair and a dirty appearance.  Normally, the type of person Tackett saw in that area in a brand new luxury sports car was an older person whose dress was a “little more fitting.” Because of the vehicle’s speed, both occupants’ appearance, and the fact that it was a high-crime area, Tackett attempted to make a traffic stop by turning around to follow the car and activating his patrol lights.  When the driver did not stop, but sped up instead, Tackett turned on his siren.  The driver, who was later identified as Guadalupe Max Limones, Jr., still did not stop or slow the car.  Instead, he again increased his speed and began a series of maneuvers that were illegal and dangerous to himself, his passenger, and others on the road, including driving on the wrong side of the two-lane road, passing in a no-passing zone, and driving erratically and recklessly. 

Although the weather was good, visibility was clear, the pavement was dry, and traffic was lighter than usual, Tackett was unable to keep up with Limones along FM 902.  Unlike Limones, Tackett did not pass in no-passing zones, and he slowed down for westbound vehicles in front of him, waiting until they pulled over before he passed.  Because Tackett did not then know Limones’s identity, the make or model of the car, or the car’s license plate number, he had no information with which to trace either Limones or the vehicle.  Consequently, he radioed for assistance from other law enforcement officers. 

Two Cooke County sheriff’s deputies, Wesley Wood and Greg Taylor, responded to the request.  They formed a partial roadblock by positioning their patrol cars, with lights flashing, at the intersection of FM 902 and FM 372—a T-intersection located approximately a mile from the Gainesville city limits and several miles west of the original encounter between Tackett and Limones. 

When he reached the T-intersection, Limones did not stop.  Instead, he sped past Wood’s and Taylor’s vehicles and proceeded north along FM 372 towards Gainesville.  Wood took over the pursuit with Taylor and Tackett, respectively, at various distances behind him.  Tackett lost sight of Limones’s car as it proceeded towards Gainesville.  Therefore, shortly after he turned onto FM 372, Tackett made another radio call requesting assistance from the Gainesville Police Department so that Limones could be stopped on FM 372 before he reached the intersection of California and Grand Avenues, one of Gainesville’s busiest intersections.  Traffic was still fairly light and he was keeping watch for pedestrians and other vehicles.

Limones’s car collided with a vehicle being driven by White on Broadway Street.
(footnote: 22)  The crash occurred approximately two minutes after Limones entered Gainesville.  Due to his patrol car’s distance behind Limones and the other pursuing patrol units, Tackett did not witness the collision but arrived at the scene about thirty seconds after it had occurred.  He saw White lying on the ground and not moving, and he called for an ambulance.  He then began to pursue Limones and the passenger who, according to an eye-witness, had fled on foot. 

This evidence establishes Tackett’s good faith as a matter of law.  It shows that Tackett assessed the initial need for the pursuit by considering Limones’s speed, his dangerous, unlawful attempts to evade detention for a traffic stop, both men’s appearances when contrasted with the luxury car they were in, and the fact that they were speeding in an area known for theft and drug-related offenses.  Tackett also considered the lack of alternative courses of action; he could not identify either the car or its driver, so apprehending the suspect later was not an option.

The evidence further shows that Tackett assessed the risks of the pursuit.  He noted that he was on a rural road, the weather was good and visibility was clear, the pavement was dry, and traffic was lighter than usual.  He activated both his lights and his siren, thereby making himself more visible to other drivers.  In addition, in attempting to catch Limones, Tackett observed no-passing zones and slowed to allow vehicles in front on him to pull over before passing them.  When he realized that he could not keep up with Limones, Tackett radioed for assistance.

The evidence further shows that Tackett continued to assess both the need for and the risks of the pursuit as it approached Gainesville.  Tackett observed that Limones, who was still unidentified, did not stop for Wood’s and Taylor’s partial roadblock at the T-intersection of FM 902 and FM 372, thereby adding to the seriousness of his actions.  Once Wood took over the pursuit and the chase proceeded towards Gainesville, Tackett did not attempt to keep up with Limones or even keep sight of the car.  Instead, although traffic was still fairly light, Tackett radioed for assistance from Gainesville’s police department so that they could stop Limones before he reached one of Gainesville’s busiest intersections and created “a mess.”  Meanwhile, Tackett kept watch for pedestrians and other vehicles.

We hold that the evidence regarding Tackett’s ongoing balancing of both the need for and the risks associated with the pursuit conclusively establishes that a reasonably prudent officer in Tackett’s circumstances could have believed that the need to apprehend the suspect immediately outweighed a clear risk of harm to the public in continuing, rather than terminating, the pursuit.
(footnote: 23) 
 Therefore, the burden shifted to White to put on controverting evidence showing that “no reasonable person in [Tackett’s] position could have thought the facts were such that they justified” his actions.
(footnote: 24) 

White has not met this burden.  She contends that the Gainesville Police Department’s policy and Inter-Jurisdictional Pursuit Agreement, which limit the total number of vehicles participating in a pursuit to three, are evidence that a reasonable police officer would not have believed that the pursuit should have been continued.  There is, however, no evidence that the policies in effect on New Year’s Eve 2001 contained the limitation on which White relies.  Although Gainesville’s policies in the summary judgment record became effective in May 2001, they were revised after the accident—in August 2002, May 2003, and June 2003.  Therefore, it is impossible for us to determine what the policies consisted of on December 31, 2001.
(footnote: 25)  Further, there is no evidence that White, who was a State Trooper and not a member of the Gainesville Police Department, had notice of the policies’ contents.

White also asserts that Tackett’s “written statement” and his deposition testimony suggest that Limones’s race “may have” factored into Tackett’s decision to engage in the pursuit.  She contends that, if Tackett was motivated by racism, he could not have acted in good faith.  Tackett testified at his deposition, however, that he decided to make the initial traffic stop based on three factors:  the vehicle’s speed, the appearance of 
both
 of the vehicle’s occupants, and the fact that the car was speeding in an area known for theft and drug-related offenses.  Further, Tackett testified that the things about Limones’s appearance that did not “fit” the luxury sports car he was driving were his relatively young age and his attire, not his race.  Moreover, Tackett observed that Limones’s companion, a white male, also did not “fit” the vehicle due to his long hair and dirty appearance.  

In light of this evidence, the mere fact that Tackett also observed that Limones was Hispanic is insufficient to raise a fact issue concerning whether racism was the real motivation behind Tackett’s decision to engage in the pursuit.
(footnote: 26) 
 To the contrary, White’s argument concerning racism is, on this record, nothing more than mere surmise or speculation, which is not evidence.
(footnote: 27) 
 For all the foregoing reasons, we hold that Tackett conclusively established his good faith and that White did not controvert this evidence by presenting evidence showing that no reasonable person in Tackett’s position could have thought the facts were such that they justified Tackett’s actions.
(footnote: 28) Accordingly, the trial court properly granted Tackett summary judgment on White’s claims. 

The dissent misunderstands our holding and confuses summary judgment burdens of proof with the rules governing what evidence may be considered in determining whether a movant has met his burden of proof.  We do not hold that Tackett is entitled to summary judgment without conclusively establishing every element of his affirmative defense, nor have we shifted to White the burden of proving Tackett’s affirmative defense by relying on the excerpts from Tackett’s deposition testimony that White attached to her response in determining that Tackett’s defense is conclusively established by the summary judgment evidence.  Instead, we simply recognize that, under settled principles of Texas summary judgment law, the trial court was required to consider all of the summary judgment evidence presented by the parties in ruling on the merits of Tackett’s motion, including the nine-page excerpt from Tackett’s deposition that White filed with her response.
(footnote: 29)  The fact that Tackett specifically referenced only one page of the deposition excerpt in his reply to White’s response does not, as the dissent contends, preclude us from considering the testimony contained in the other eight pages of the excerpt in determining whether Tackett’s affirmative defense was conclusively established by the summary judgment evidence.  Neither party’s burden of proof is changed by our determination that this uncontested summary judgment evidence supports Tackett’s motion. 

We overrule White’s two issues and affirm the trial court’s judgment.
(footnote: 30)

JOHN CAYCE

CHIEF JUSTICE

PANEL A: CAYCE, C.J.; HOLMAN and WALKER, JJ.

WALKER, J. filed a dissenting opinion.

DELIVERED: August 25, 2005

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-04-023-CV

PATRICIA WHITE APPELLANT

AND APPELLEE

V.

MARK TACKETT, IN HIS OFFICIAL APPELLEE

CAPACITY AS STATE TROOPER AND APPELLANT

FOR THE TEXAS DEPARTMENT 

OF PUBLIC SAFETY

------------

FROM THE 235TH DISTRICT COURT OF COOKE COUNTY

------------

DISSENTING OPINION

------------

Because the majority misapplies the traditional summary judgment burdens of proof and standards of review, I respectfully dissent.

The standards for reviewing a motion for summary judgment are well established.  The movant has the burden of showing that there is no genuine material fact issue and that it is entitled to judgment as a matter of law.  
Tex. R. Civ. P.
 166a(c); 
Calvillo v. Gonzalez
, 922 S.W.2d 928, 929 (Tex. 1996); 
City of Houston v. Clear Creek Basin Auth.
, 589 S.W.2d 671, 678 (Tex. 1979).  When a defendant moves for summary judgment based on an affirmative defense, the defendant bears the burden of proving each essential element of that defense.  
Ryland Group, Inc. v. Hood
, 924 S.W.2d 120, 121 (Tex. 1996).  If the movant’s motion and summary judgment proof facially establish the movant's right to judgment as a matter of law, then the burden shifts to the nonmovant to raise a fact issue precluding summary judgment or to show that the movant’s legal position is unsound.  
City of Houston
, 589 S.W.2d at 678; 
St. Paul Ins. Co. v. Mefford
, 994 S.W.2d 715, 718 (Tex. App.—Dallas 1999, pet. denied) (op. on reh'g).    

In her first issue, White contends that Tackett failed to meet the first summary judgment prong; that is, he failed to prove every element—specifically the good faith element—of his affirmative defense of official immunity to establish his right to judgment as a matter of law.  The summary judgment evidence produced by Tackett consists only of his own affidavit and a copy of a settlement agreement.  The settlement agreement is not relevant to Tackett’s affirmative defense.  White objected to various portions of Tackett’s affidavit, and the trial court entered a five-page order sustaining all of White’s objections. A total of approximately five pages of Tackett’s nine-page affidavit were ordered stricken.  The remaining portions of Tackett’s affidavit fail, as a matter of law, to establish the good faith element of Tackett’s alleged official immunity defense.  
See City of Lancaster v. Chambers
, 883 S.W.2d 650, 653 (Tex. 1994) (recognizing good faith is element of official immunity defense that governmental employee must prove).
(footnote: 31)  
Consequently, the burden never shifted to White to come forward with any controverting summary judgment evidence.  
See, e.g., Casso v. Brand
, 776 S.W.2d 551, 556 (Tex. 1989); 
City of Houston
, 589 S.W.2d at 678.  Because Tackett’s summary judgment evidence—the unstricken portions of his affidavit—failed to conclusively establish the essential good faith element of his affirmative official immunity defense, the trial court erred by granting summary judgment for Tackett on his affirmative defense.

The majority does not dispute that Tackett’s summary judgment evidence alone (the unstricken portions of his affidavit) is insufficient to conclusively establish the good faith element of his affirmative defense.  The majority instead holds that controverting summary judgment evidence attached to White’s response—specifically excerpts from Tackett’s deposition—satisfied Tackett’s initial burden of conclusively establishing every element of his affirmative defense.  The majority attempts to justify its reliance on White’s controverting summary judgment evidence by indicating that Tackett’s reply cites White’s evidence, specifically Tackett’s deposition testimony.  Tackett’s reply, however, contains a citation to only 
one page—
page 45—
of his deposition and that evidence was not on file twenty-one days before the hearing.  
See
 
Tex. R. Civ. P.
 166a(d).  The majority’s analysis nonetheless utilizes 
all
 of Tackett’s deposition excerpts attached as controverting summary judgment evidence to White’s response, not just page 45 referenced by Tackett in his reply.
(footnote: 32) 

The Texas Supreme Court has explained that while the majority’s approach may be appropriate in federal summary judgment practice, it is not in Texas traditional summary judgment practice:
 

Under [Fed.R.Civ.P.] 56c, summary judgment is proper “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” 

Casso
, 776 S.W.2d at 556 (quoting 
Celotex. Corp. v. Carett
, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986))
.  The supreme court has explained that traditional Texas summary judgment practice, unlike federal summary judgment practice, involves a distinct, two-step process:
(footnote: 33)
 Texas law, of course, is different.  While the language of our rule is similar [to the federal rule], our interpretation of that language is not.  We use summary judgments merely “to eliminate patently unmeritorious claims and untenable defenses, and 
we never shift the burden of proof to the non-movant unless and until the movant has “establish[ed] his entitled to a summary judgment on the issues expressly presented to the trial court by conclusively proving all essential elements of his cause of action or defense as a matter of law.”

Casso
, 776 S.W.2d at 556 (citing 
City of Houston
, 589 S.W.2d 671, 678 n.5) (emphasis added).  

Nor can I agree with the majority that Rule 166a(c) or the holding 
Wilson v. Burford 
authorize the trial court to grant summary judgment to a defendant moving for a traditional summary judgment on the basis of an affirmative defense when the defendant movant’s summary judgment evidence fails to conclusively establish every element of the defense.  
Tex. R. Civ. P.
 166a(c); 
Wilson v. Burford
, 904 S.W.2d 628, 629 (Tex. 1995).  The Texas Supreme Court in 
Casso
 rejected this interpretation of Rule 166a(c)’s language, making it clear that the burden of proof never shifts to the nonmovant unless the movant conclusively establishes all essential elements of his cause of action or affirmative defense—which Tackett undisputedly did not do, even considering page 45 of his deposition.  
Casso
, 776 S.W.2d at 556.  And in 
Wilson, 
the supreme court explained that when a 
movant
 attaches a deposition transcript to a brief filed in support of the 
movant’s
 motion for summary judgment, the trial court may consider the deposition transcript as part of the 
movant’s
 summary judgment evidence.  
Wilson
, 904 S.W.2d at 628-29.  The 
Wilson
 court did not alter the fundamental principle that a movant must conclusively establish all essential elements of his cause of action or defense as a matter of law before the burden shifts and the trial court looks to the nonmovant’s summary judgment evidence.  
See, e.g., Ryland Group, Inc
., 924 S.W.2d at 121; 
Steger v. Muenster Drilling Co., 
134 S.W.3d 359, 378 n.18 (Tex. App.—Fort Worth 2003, pet. denied) (recognizing “defendant-movant
 must present summary judgment evidence 
that establishes each element of the affirmative defense as a matter of law”) (emphasis added).

Although the majority claims not to shift the traditional summary judgment burdens of proof, it does.  The majority upholds an affirmative defense summary judgment even though the movant’s summary judgment evidence (even, in fact, including page 45 of Tackett’s deposition referenced in his reply) is not sufficient to conclusively establish every essential element of the affirmative defense.  The majority instead looks to controverting summary judgment evidence produced by the nonmovant White to determine whether the movant Tackett met his initial burden of proof of conclusively establishing every element of his affirmative defense.

Because I cannot agree with the majority’s departure from established summary judgment law, I dissent.  I would sustain White’s first issue,
(footnote: 34) reverse the trial court’s summary judgment for Tackett, and remand the case to the trial court.

SUE WALKER

JUSTICE

DELIVERED: August 25, 2005

Exhibit A

Exhibit B

FOOTNOTES
1:
White also sued Greg Taylor and Wesley Wood, in their official capacities as deputy sheriffs of Cooke County, Texas, and the trial court granted them summary judgment as well.  White’s appeal from the summary judgment in favor of Taylor and Wood was, however, dismissed by agreement of the parties.

2:
Tex. R. Civ. P.
 166a(c); 
S.W. Elec. Power Co. v. Grant, 
73 S.W.3d 211, 215 (Tex. 2002); 
Casso v. Brand,
 776 S.W.2d 551, 556 (Tex. 1989); 
City of Houston v. Clear Creek Basin Auth.
, 589 S.W.2d 671, 678 (Tex. 1979). 

3:
S.W. Elec. Power Co., 
73 S.W.3d at 215; 
Sci. Spectrum, Inc. v. Martinez
, 941 S.W.2d 910, 911 (Tex. 1997); 
Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.
, 391 S.W.2d 41, 47 (Tex. 1965).

4:
Great Am.
, 391 S.W.2d at 47.

5:
Harwell v. State Farm Mut. Auto. Ins. Co.
, 896 S.W.2d 170, 173 (Tex. 1995). 

6:
Great Am.
, 391 S.W.2d at 47. 

7:
Tex. R. Civ. P.
 166a(c); 
Trico Techs. Corp. v. Montiel,
 949 S.W.2d 308, 310 (Tex. 1997). 

8:
Rhone-Poulenc, Inc. v. Steel
, 997 S.W.2d 217, 223 (Tex. 1999); 
City of Lancaster v. Chambers,
 883 S.W.2d 650, 653 (Tex. 1994)
.
 

9:
Ryland Group, Inc. v. Hood,
 924 S.W.2d 120, 121 (Tex. 1996)
.  

10:
Chambers,
 883 S.W.2d at 653. 

11:
Wadewitz v. Montgomery,
 951 S.W.2d 464, 466-67 (Tex. 1997); 
Chambers,
 883 S.W.2d at 656. 

12:
Univ. of Houston v. Clark,
 38 S.W.3d 578, 581 (Tex. 2000); 
Chambers,
 883 S.W.2d at 657 n.
7.

13:
Chambers,
 883 S.W.2d at 656-57 (emphasis supplied); 
accord Clark,
 38 S.W.3d at 581. 

14:
Clark,
 38 S.W.3d at 581;
 Hayes v. Patrick,
 71 S.W.3d 516, 521 (Tex. App.—Fort Worth 2002, no pet.).

15:
Wadewitz,
 951 S.W.2d at 467. 

16:
See Clark,
 38 S.W.3d at 583; 
Wadewitz,
 951 S.W.2d at 467.

17:
Clark,
 38 S.W.3d at 582-83, 586.

18:
Id. 
at 583.

19:
Chambers,
 883 S.W.2d at 657.

20:
The trial court sustained White’s objections to various portions of Tackett’s affidavit filed in support of his summary judgment motion.  We do not consider the excluded affidavit testimony in our analysis of whether Tackett met his burden of proving that he acted in good faith.  

21:
Because the dissent has attached one page of the deposition excerpt to the dissenting opinion, we have included all nine pages of the excerpt as an addendum to this opinion in the interest of completeness.

22:
White contends that at the time of the collision Limones was traveling at speeds of up to 60 or 65 miles per hour in a residential neighborhood.

23:
See Clark,
 38 S.W.3d at 587-88;
 Wadewitz,
 951 S.W.2d at 466-67; 
Chambers,
 883 S.W.2d at 656. 

24:
Chambers,
 883 S.W.2d at 657.

25:
Several of the policies that White proffered from other local governments likewise had effective or revision dates after the date of the New Year’s Eve 2001 accident. 

26:
See S.W. Elec. Power Co.,
 73 S.W.3d at 215.

27:
See Browning-Ferris, Inc. v. Reyna,
 865 S.W.2d 925, 928 (Tex. 1993); 
Kindred v. Con/Chem, Inc.,
 650 S.W.2d 61, 63 (Tex. 1983) (both holding that circumstantial evidence may be used to establish any material fact, but it must transcend mere suspicion or surmise).

28:
See Chambers,
 883 S.W.2d at 657.

29:
See
 
Tex. R. Civ. P.
 166a(c)
 (providing for trial court to rule on summary judgment motion based on, among other evidence, deposition transcripts referenced or set forth in motion or response); 
Wilson v. Burford,
 904 S.W.2d 628, 629 (Tex. 1995) (holding that deposition transcript referred to in plaintiffs’ response to defendants’ motion for summary judgment was, “by the plain language of Rule 166a(c), proper summary judgment evidence on which both the movant and the respondent could rely”). 

30:
In light of our holding on White’s issues, we need not consider Tackett’s issue on cross-appeal regarding the trial court’s rulings on his summary judgment evidence.  
See
 
Tex. R. App. P.
 47.1 (providing that appellate court need address only those issues necessary to final disposition of appeal).

31:
See also 
Exhibit A attached hereto, a copy of Tackett’s affidavit with the portions ordered stricken omitted.

32:
Page 45 of Tacket’s deposition, mistakenly referred to in his reply as page 42, is attached hereto as Exhibit B.

33:
First, the movant bears the burden of coming forward with summary judgment evidence proving each essential element of his cause of action or affirmative defense.  
See, e.g.
, 
Ryland Group, Inc.
, 924 S.W.2d at 121.  If the movant’s motion and summary judgment proof facially establish the movant's right to judgment as a matter of law, then the second step is triggered and the burden shifts to the nonmovant to come forward with summary judgment evidence raising a fact issue.  
City of Houston
, 589 S.W.2d at 678.

34:
In her second issue, which I would not reach, White challenges the second summary judgment prong; she claims that if, somehow, Tackett conclusively established every element of his affirmative defense of official immunity, then she met her summary judgment burden of coming forward with controverting summary judgment evidence demonstrating the existence of material fact issues concerning Tackett’s official immunity defense.  
See
 
Tex. R. App. P.
 47.1 (court of appeals must address only issues necessary to disposition of appeal).

COMMENTS AND ANNOTATIONS
Comment 1:
Majority-Chief Justice Cayce

Dissent-Justice Walker