**EL PASO TIMES, INC., Appellant,**

v.

**James W. KERR, Jr., Appellee.**

**No. 08–85–00025–CV.**

Court of Appeals of Texas, El Paso.

March 26, 1986.

Rehearing Denied April 16, 1986.

Richard Munzinger, Bryan H. Hall, Scott, Hulse, Marshall, Feuille, Finger & Thurmond, El Paso, for appellant.

Jerry Gibson, San Antonio, for appellee.

Before WARD, OSBORN, and SCHULTE, JJ.

OPINION

SCHULTE, Justice

The Appellant, El Paso Times, Inc., was sued by Appellee, an assistant United States attorney, for libel concerning an article which was written by Appellant's reporter, Ron Dusek. Mr. Dusek's article appeared in the editorial section of the paper and was entitled "Federal System Less Than Just?" The article in referring to Mr. Kerr's closing argument in the de la Torre-Garcia trial made the statement that "Kerr lied." The article contained a further reference to cheating during the same drug conspiracy trial. The jury found that the "lying" phrase in the article was not published with actual malice, but it did find that the "cheating" phrase falsely accused Appellee of cheating and that the accusation was defamatory and published with actual malice. The jury awarded $500,-000.00 in actual damages and $3,000,000.00 in exemplary damages. After remittitur by the trial court, judgment was entered for $100,000.00 actual and $500,000.00 exemplary damages. We reverse and render.

In Points of Error Nos. One and Two, Appellant presents the assertion that the article was an expression of opinion and hence protected under the First and Fourteenth Amendments of the United States Constitution, relying in part on *Bose Corporation v. Consumers Union of United States, Inc.*, 466 U.S. 485, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984). The current test on such an issue is to examine the totality of the circumstances and the full context of the publication to see if it would be received by the average reader as a factual assertion or as a writer's personal opinion. *Ollman v. Evans*, 750 F.2d 970 (D.C.Cir.1984). These two points of error have merit and we believe are determinative of this appeal. More particularly, the first point is that the evidence established as a matter of law that the statement regarding cheating was a non-actionable protected expression of opinion. The second point urges there was no evidence that Appellant published a false statement of fact.

In view of the jury findings referred to and since a public official, such as Appellee, must prove by clear and convincing evidence that a statement was published with *actual malice* before it will be libelous, the statement "Kerr lied" is protected speech. *New York Times v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). Thus, the only question remaining is whether the statement "[t]he burden is no excuse for cheating" is protected speech. While there is a controversy as to whether or not this statement actually accused the Appellee of cheating, for these points of error we assume for our discussion that the statement does make such an accusation.

All assertions of opinion are protected by the First Amendment of the United States Constitution. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974); *Ollman v. Evans, supra*. The real question then is whether the statement is an assertion of opinion or fact. While the U.S. Supreme Court has never expressed a test for courts to use in making this deci-

sion, the *Ollman* Court has utilized a logical and workable four-factor test.

First, the court should analyze the common usage or meaning of the specific language aimed at determining whether there is a precise meaning present for which a consensus of understanding exists, or whether the statement is indefinite and ambiguous. Second, the court should consider the statement's verifiability. Can the statement be objectively characterized as true or false? If a statement cannot be verified, then the trier of fact could not return a verdict to a special issue questioning the truth of the statement (because truth is always a defense in a libel action [*New York Times, Inc., supra.*]). Third, the court should consider the full context of the statement to determine if the language surrounding the statement would influence the average reader's readiness to infer factual content in the specific language used. Fourth, the broader context or setting in which the statement appears should be analyzed.

In applying the foregoing analysis to the case before us, we believe the statement regarding "cheating" is protected opinion. First, in regard to the common usage or meaning of the statement "[t]he burden is no excuse for cheating," Webster's New Collegiate Dictionary (1980) defines "cheat" as:

1: the act or an instance of fraudulently deceiving: DECEPTION, FRAUD 2: one that cheats; PRETENDER, DECEIVER 3: any of several grasses; esp: the common chess 4: the obtaining of property from another by an intentional active distortion of the truth

1: to deprive of something valuable by the use of deceit or fraud 2: to influence or lead by deceit, trick, or artifice 3: to defeat the purpose or blunt the effects of ... 1a: to practice fraud or trickery b: to violate rules dishonestly (as at cards or on an examination) 2: to be sexually unfaithful. ...

Cheating has no unique definition. It may, in some instances, imply criminal acts; it also serves to accuse one of unfair deal-

ings. It is not a word which has a precise meaning. It means different things to different people at different times and in different situations. Since the word "cheating" has no distinct definition, it is not likely that the average reader of the article assumed that the author, Ron Dusek, had undisclosed facts to back up his statement. This is material here because even a statement of opinion will not be protected if it is couched in such a way to imply that the author possesses undisclosed facts. *Lauderback v. American Broadcasting Company*, 741 F.2d 193 (8th Cir.1984), *cert. denied,* ——— U.S. ———, 105 S.Ct. 961, 83 L.Ed.2d 967 (1985).

> When an opinion held out for belief is stated so that the average listener would infer that the speaker had an undisclosed factual basis for holding the opinion, the listener does not have the tools necessary to independently evaluate the opinion and may rely on unfounded opinion that defames an individual.

*Lauderback, supra,* at 195–196. We further examine the specific reference to cheating. "In every case, the prosecution sounds off about its burden to prove guilt. The burden is no excuse for cheating." It was the reporter's testimony that his "no excuse for cheating" reference applied to all of the events mentioned in the article including those not involving Appellee. A fair reading of the article as a whole leads to that conclusion as well. The characterization of the article as assertion of fact would be more appropriate with regard to the statement "Kerr lied," but as previously noted, the jury found no malice in this assertion. We are unable to construe the "cheating" language as a factual assertion that Appellee cheated.

Nor in applying the second factor can we say that the cheating reference can be "objectively characterized as true or false." It constituted the reporter's perception of the federal judicial system. In considering the statement's verifiability, can it be proved or disproved that Kerr cheated? In *Buckley v. Littell*, 539 F.2d 882 (2nd Cir.1976), *cert. denied,* 429 U.S. 1062, 97 S.Ct. 785, 50 L.Ed.2d 777 (1977), author William F. Buck-

ley was accused of being a fascist. The Second Circuit wrote that the word fascist, used in its context, could not be given a definition which could be used to evaluate the truthfulness of the statement. The court stated that the word was not used in a literal way. In the case at bar, the word "cheating" was used in a way that denotes opinion. It would be impossible to look at the acts of Appellee during the de la Torre-Garcia trial and determine if he was or was not "cheating."

As far as the record before us is concerned, there is no evidence that Kerr either lied or cheated. In the de la Torre drug conspiracy trial, Gross, a government informant, and Moren, a government agent, had both testified that he (de la Torre) had admitted to them that he was one of the financial backers of the conspiracy. De la Torre's testimony in his own defense, in that trial, was a total denial of any complicity. In this libel case (not understanding the legal significance of the government's admission evidence), the reporter testified Kerr lied in arguing that de la Torre admitted to being the moneyman since de la Torre's testimony in court was an absolute denial. When the reporter was asked for any evidence that Kerr had cheated in regard to the submission of the list of code names of certain individuals to attorney Chagra, none was forthcoming. What is clear is that different people would come to different conclusions concerning Kerr's prosecution of the case and that the reference to cheating could not be proved or disproved or objectively characterized as true or false.

The third criteria to evaluate under the Ollman test is the context in which the statement was used.

> [G]iven all the facts of a situation, the public can independently evaluate the merits of the most outrageous opinion and discredit those that are unfounded.

*Lauderback, supra,* at 195. In *Greenbelt Cooperative Publishing Association v. Bresler,* 398 U.S. 6, 90 S.Ct. 1537, 26 L.Ed.2d 6 (1970), a newspaper had accused

a local contractor of indulging in blackmail in his negotiations with the city. The Supreme Court stated that because the newspaper had given its reasons for accusing Breslar of blackmail, the reader could evaluate the facts and accept or deny the paper's opinion. Dusek's article gives the reader his reasons for his accusation of cheating. The portion of the article pertinent here states:

More examples of the government appearing to boost its case came during the de la Torre-Garcia trial.

.  .  .  .  .

More suspicious action: Weeks before the trial, the prosecution and defense shared evidence. There was a piece of paper with persons' names on it and their alleged code names to be used during the alleged smuggling operation. The piece of paper did not have Garcia's or de la Torre's name on it.

A day and a half before trial, the prosecution discovered that it also had another list with all the same names as the first names plus, at the bottom, the names and codes for Garcia and de la Torre.

Chagra said a day and a half was not enough time for him to have the second list analyzed by a handwriting expert to determine who wrote the list.

In every case, the prosecution sounds off about its burden to prove guilt. The burden is no excuse for cheating.

And the burden isn't that heavy to begin with.

It seems clear that Mr. Dusek gave the facts upon which he based the article. He states that Chagra is the one who stated that there was not enough time to have the handwriting expert analyze the list. Whether there was or was not enough time is immaterial because the average reader would assume that Chagra, as de la Torre's defense attorney, would be biased in his assertions. It should also be noted that in the second paragraph, Dusek, in prefacing the entire article, writes "[t]his opinion has nothing to do with the fact...." This would put the average reader on notice that they were going to read an opinion. The article is also laced with language that is typically used as opinion. Dusek states that the political future of a federal prosecutor is dependent upon whether he can make the "big" case that "will get lots of publicity." By looking at the totality of this article, it is replete with "rhetorical hyperbole" that would let the average reader know that the article was opinion.

Finally, the court should consider the broader context or setting in which the specific language appears. The article appeared as a Sunday commentary in the editorial section of the newspaper. There are repeated expressions throughout the article referring to the assertions as "[t]his opinion." The author's picture was adjacent to the article which was, as noted, titled "Federal System Less Than Just?" The title itself projects that the article is to contain an opinion. *See: Loeb v. Globe Newspaper Company,* 489 F.Supp. 481 (D.Mass.1980).

Whether the publication is a protected expression of opinion or an actionable statement of fact is a law question for the court. *Ollman, supra; Lauderback, supra; Lewis v. Time, Inc.,* 710 F.2d 549, 553 (9th Cir.1983); *Rinsley v. Brandt,* 700 F.2d 1304, 1309 (10th Cir.1983); *see also: A.H. Belo Corporation v. Rayzor,* 644 S.W.2d 71 (Tex.App.—Fort Worth 1982, writ ref'd n.r.e.); Restatement (Second) of Torts, sec. 566 (1977).

In summary, in applying the *Ollman* test, we conclude the cheating reference is at most indefinite and ambiguous and not susceptible to a precise meaning for which a consensus of understanding exists within the context of the article. We further believe the statement is not verifiable, not capable of being characterized as true or false, and that in its broad context the reference was to the system in general and could not influence the average reader's readiness to infer factual content. Finally, the article appeared in that portion of the paper where the reader was to look for opinion and not news. We conclude that as a matter of law the statement of cheating

complained of was a protected expression of opinion rather than an actionable statement of fact. Appellant's Points of Error Nos. One and Two are sustained and we need not consider the further points and cross-point.

We reverse and render judgment that Appellee take nothing by his suit.

WARD, J., not sitting.