John YIAMOUYIANNIS, Appellant,

v.

Paul THOMPSON, the Express–News Corporation, the Bexar County Medical Society and Dr. Randall S. Preissig, Appellees.

No. 04–87–00673–CV.

Court of Appeals of Texas, San Antonio.

Dec. 30, 1988.

Rehearing Denied Feb. 8, 1989.

Earle Cobb, Jr., San Antonio, for appellant.

Mark J. Cannan, Lang, Cross, Ladon, Boldrick & Green, Sharon E. Calloway, Groce, Locke & Hebdon, San Antonio, for appellees.

Before ESQUIVEL, BUTTS and PEEPLES, JJ.

## OPINION

PEEPLES, Justice.

In this libel case, plaintiff appeals a summary judgment granted on the ground that the defendants' statements were constitutionally protected opinions and not actionable assertions of fact. Plaintiff also complains of certain discovery orders. We affirm in part and reverse and remand in part.

During a referendum campaign in 1985 to authorize fluoridated water in San Antonio, plaintiff John Yiamouyiannis publicly opposed the fluoridation effort, and defendant Paul Thompson questioned his credentials and expertise in the San Antonio Express–News.[1] Thompson called Yiamouy-

---

1. Thompson's column in its entirety reads as follows:

Local radio talk shows an intellectual Sahara

Almost incredibly, the ranking radio talk show hosts in San Antonio today have taken it into their heads to oppose water fluoridation in the Nov. 5 referendum.

I am talking about Allan Dale of KRNN; Jud Ashmore of KBUC; Our Great Leader Ricci Ware of KTSA, and WOAI's resident pundit Carl Wiglesworth.

If anyone at all in the intellectual Sahara of Alamo City Radio supports fluoride, it is a tightly kept secret.

The four talk show hosts make a display of objectivity by now and then inviting in a proponent of the fluoride cause. But then they offset that by presenting an outrageous hoke artist and

iannis a "quack" and "an outrageous hoke artist and imported fearmonger," implied that he lacked "solid credentials," said Consumer Reports had exposed him for "quackery," and characterized his views as "incomprehensible mumbo jumbo." Defendant Bexar County Medical Society and its spokesman Dr. Randall Preissig made similar statements, using the words "quack" and "quackery" in reference to plaintiff, and asserting that he had headed an institution that opposed the pasteurization of milk and vaccines for smallpox and polio.

Yiamouyiannis brought suit for libel against Thompson, The Express–News Corporation, Preissig, and the Medical Society. Each defendant moved for summary judgment based on the pleadings on the sole ground that each of their statements was an assertion of opinion, absolutely privi-

leged under the First Amendment as construed in *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974). In *Gertz,* the court gave to statements of opinion a constitutional shield against defamation lawsuits:

> Under the First Amendment there is no such thing as a false idea. However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas. But there is no constitutional value in false statements of fact.

*Id.* at 339–40, 94 S.Ct. at 3007.[2] According to later cases, this statement establishes an absolute constitutional privilege for expressions of opinion. *See Ollman v. Evans,* 750 F.2d 970, 974–75 n. 6 (D.C.Cir.1984) (en banc), *cert. denied,* 471 U.S. 1127, 105 S.Ct. 2662, 86 L.Ed.2d 278 (1985); *Brasher v. Carr,* 743 S.W.2d 674, 678–79 (Tex.App.—

imported fearmonger like Ohio biochemist John Yiamouyiannis as if he had solid credentials and deserved the same kind of respect.

The truth is our radio hosts probably don't know the difference. A couple of them treated Yiamouyiannis as if he were some kind of messiah. You could accurately say they were charmed, carried away by the well-traveled Ohio pitchman and got conned on their own radio shows.

Yiamouyiannis, exposed for "quackery" by the prestigious national Consumer Reports (he later sued Consumer Reports and lost), is the No. 1 hired gun of anti-fluoride campaigners here, and indeed, was back in town yesterday with another gush of his incomprehensible mumbo-jumbo.

**The lineup**

Right up and down the line, whether they admit it or not, the quartet of presiding S.A. radio forum leaders goes down as stuffy-conservative by persuasion, two of them on the redneck side.

KRNN's Dale, a septuagenarian who likes to think of himself as one of the last bastions of good old-fashioned American values, is actually a throwback. On most social issues, "Old Leather Lungs," as he's called, not always in endearment, ends up in a position to the right of the Visigoths.

KBUC's Ashmore and KTSA's Ware not too long ago were co-hosts of an arrogant wakeup show on country-western KBUC that was bitterly denounced by minority leaders as out-and-out redneck and, for a time, kept the station in hot water with the FCC.

The Ricci and Jud Show broke up last year, with Ware going on nights now at KTSA. In

basic outlook and orientation, though, nothing has changed with this twosome.

As for WOAI's Wiglesworth, a bearded man with an authoritative tone but no scientific background, he had the gall to tell listeners early in the fluoride hassle that HIS OWN studies had convinced him of the rectitude of the anti-fluoride cause.

**Mediocrities**

One by one, in describing the talk show hosts of Alamo City Radio, one can say with total assurance, "Larry King he's not."

It's true an expert like King, thoroughly backgrounded on his guests in advance, with a gimlet eye for roving mahatmas, swamis and other phonies, will not often be found in a market of this size.

But we certainly deserve something better than the kind of radio forum we've got—undiscriminating hosts allowing anyone at all on their air to spout the wackiest sort of unchecked opinionation.

Any radioman who can't spot the difference between a quack like Ohio biochemist Yiamouyiannis and authorized spokesmen for the medical, dental and research professions of this country ought to be kicked off the air.

He's a drawback, a menace to progress and correct public information, and he wouldn't be qualified to run a talk show in Moose Jaw, Idaho.

2. The Court reaffirmed this statement in *Bose Corp. v. Consumers Union,* 466 U.S. 485, 504, 104 S.Ct. 1949, 1961, 80 L.Ed.2d 502 (1984), and suggested continued adherence to the fact/opinion distinction in *Hustler Magazine v. Falwell,* 485 U.S. ——, 108 S.Ct. 876, 99 L.Ed.2d 41 (1988).

Houston [14th Dist.] 1987, writ granted); *City of Dallas v. Moreau,* 718 S.W.2d 776, 780 (Tex.App.—Corpus Christi 1986, writ ref'd n.r.e.); *El Paso Times, Inc. v. Kerr,* 706 S.W.2d 797, 798 (Tex.App.—El Paso 1986, writ ref'd n.r.e.) *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 761 (1987).

■ Where to locate the boundary between absolutely privileged opinions and actionable assertions of fact is a question of law for the court. *See El Paso Times, Inv. v. Kerr, supra* at 800 (citing cases). This law question may be resolved at trial or raised, as in this case, in a summary judgment hearing at which the court decides whether, in the words of TEX.R.CIV. P. 166a(c), "the moving party is entitled to judgment as a matter of law" under *Gertz.*

The line between opinions and statements of fact is not always distinct. The court in *Ollman v. Evans, supra,* proposed a four-part inquiry that was applied by the Texas courts in *El Paso Times v. Kerr* and *Brasher v. Carr, supra.* We consider the *Ollman* analysis helpful. In distinguishing between fact and opinion, the court should (1) analyze the common usage of the specific language to determine whether it has a precise, well understood core of meaning that conveys facts, or whether the statement is indefinite and ambiguous; (2) assess the statement's verifiability, that is, whether it is objectively capable of being proven true or false; (3) consider the entire context of the article or column, including cautionary language; and (4) evaluate the kind of writing or speech as to its presentation as commentary or "hard" news. 750 F.2d at 978–84. This inquiry should help determine, for example, whether the statement is to be taken as precise and literal or loose and figurative, and whether the language is employed as metaphor or hyperbole, or to convey actual facts.

■ Under these principles, the references to Yiamouyiannis as a quack, a hoke artist, and a fearmonger are assertions of pure opinion, as are the statements that he was exposed for quackery, lacks solid credentials, and expresses incomprehensible mumbo jumbo. These terms of derision, considered in context and in light of the fluoridation debate, are vintage hyperbole, and are not capable of proof one way or the other. They are the speaker's shorthand way of opining that Yiamouyiannis is not worthy of belief, his views are confused nonsense, and he is not qualified to instruct the public about fluoridation. While other commentators might have taken a more ratiocinative approach, the defendants were entitled to use instead these particular terms of invective in this context. As to each of these utterances, the absolute constitutional privilege applies, and summary judgment was proper as to plaintiff's libel claims and his libel-related counts sounding in negligence and conspiracy.

■ We believe this decision is true to the First Amendment values reflected in *Gertz.* When the topic is a public issue such as the fluoridation of drinking water, speakers may express their opinions about their opponents' views and qualifications without having to prove the substantial "truth" of those opinions to a jury in a defamation case. Our holding also recognizes the limitations of the legal process, which is ill-suited to determine what is and is not quackery, hokum, and mumbo jumbo, even with such tools as broad discovery, expert testimony, and finely-crafted jury questions and definitions.

■ But Preissig's declaration that Yiamouyiannis once headed a group that opposed vaccines for smallpox and polio and pasteurization of milk is a specific claim about plaintiff's actions in the past. Unlike the other subjective statements, it can easily be proven true or false. We hold that this assertion of fact is unsheltered by the *Gertz* privilege for opinions, which was the sole ground urged by the defendants. Whether Preissig's words are defamatory in the first place, and whether they are true, are issues not raised by any of the motions for summary judgment.

■ In addition to the libel-related claims, plaintiff pleaded that the defendants used "official oppression" to keep him off radio and television. This, plaintiff's petition contends, violates section 39.02 of the Penal Code and 42 U.S.C. § 1983, and constitutes a tortious interference with his

right to free speech. The summary judgment before us orders that plaintiff take nothing on the entire case, including these three non-defamation counts, even though they were not addressed by any of the motions for summary judgment. The court erred in ruling on these unchallenged causes of action. *Chessher v. Southwestern Bell Tel. Co.,* 658 S.W.2d 563, 564 (Tex.1983) (Because motion for summary judgment challenged only one of four pleaded causes of action, take-nothing judgment on the three unchallenged causes was improper). But plaintiff has not assigned these adverse rulings as error in this court, and therefore we cannot disturb them. *Prudential Ins. Co. v. J.R. Franclen, Inc.,* 710 S.W.2d 568, 569 (Tex.1986); *Gulf Consol. Int'l, Inc. v. Murphy,* 658 S.W.2d 565, 566 (Tex.1983).

Plaintiff complains further of a protective order that sustained objections to his request for admissions concerning the factual basis for the defendants' opinions and the merits of fluoridated water. In light of our holdings about plaintiff's claims, most of the requests for admissions are clearly irrelevant. Upon remand the scope of discovery will be determined by the trial court in the exercise of its discretion.

For the reasons stated, we affirm the judgment that plaintiff take nothing against defendants Thompson and the Express–News. We affirm the judgment that plaintiff take nothing against defendants Preissig and the Medical Society, with the sole exception of the libel and libel-related causes of action based on the statement of fact concerning polio, smallpox, and pasteurization measures, as to which the judgment is reversed and remanded.