In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-21-00247-CV

_____

**SHARON APPLETON, Appellant**

**V.**

**CONSOLIDATED CRANE AND RIGGING, LLC, Appellee**

**On Appeal from the 457th District Court**
**Montgomery County, Texas**
**Trial Cause No. 21-07-10414-CV**

**MEMORANDUM OPINION**

Sharon Appleton appeals the trial court's grant of Consolidated Crane & Rigging, LLC's ("CCR") Traditional and No-Evidence Motion for Summary Judgment on her claims for damages arising out of the death of her husband, Alfred Appleton,[1] after he sustained injuries in a fall from a boom truck parked in the driveway of the Appletons' neighbor and CCR employee, Melvin Mixon. In two

---

[1]For purposes of clarity, we will refer to Alfred Appleton by his first name and Sharon as "Appleton."

1

issues, Appleton asks whether the trial court erred in granting CCR's Traditional and No-evidence Motion for Summary Judgment on its respondeat superior claim and negligent training and supervision claims. For the following reasons, we will affirm the trial court's judgment.

## I. Background

### A. Facts

Melvin Mixon was a crane operator and long-term employee of CCR. In June 2019, he approached CCR's owner and president, George Turner, and asked to rent a boom truck[2] to set a flagpole at the church he attended. Mixon offered to pay for the rental but was donating his time operating the equipment to set the flagpole. Turner responded that Mixon did not have to pay the rental fee for the boom truck, instead CCR offered the use of the equipment as a "charitable donation" to the church. Turner allowed Mixon to take the boom truck from CCR's yard for the sole purpose of setting the flagpole at the church on a Saturday morning in June 2019. There is some dispute regarding whether Turner permitted Mixon to take the equipment on Friday evening and park it overnight in his driveway or whether Turner instructed Mixon to take the equipment on Saturday morning.

---

[2]Mixon explained in his deposition that this was a small crane, but they commonly referred to it as a "boom truck" and how we refer to it in this opinion.

On the Saturday morning in question, Mixon set the flagpole with the boom truck, and instead of immediately returning the equipment to CCR's yard, Mixon went home to drop off an ice chest but did not tell anyone at CCR that he planned to do so. While there, Mixon noticed a limb over his driveway that he wanted to cut so he could install a light on the tree and realized he could reach it with the boom truck and his pole saw. He did not have any plan to use the boom truck at his home until he dropped the ice chest off and saw he could reach the limb. Mixon testified that he had completed his task at the church by then. Mixon further explained he did not advise anyone at CCR he was going to undertake this task on his own property, nobody from CCR authorized him to use the boom truck to cut the limb, and it did nothing to further CCR's business. Turner's affidavit corroborated this.

While parked in his driveway, Mixon used the boom truck as a platform. He placed his personal ladder on the bed of the truck to access the boom, then climbed to the boom to use his pole saw to cut the limb. At some point either while Mixon climbed the ladder to reach the boom or once he was already on top of the boom, his neighbor, Alfred,[3] climbed onto the bed of the boom truck and stood at the bottom of the ladder. It is undisputed that Mixon did not request Alfred's assistance.

When Mixon reached down to pick up his pole saw to cut the limb, he saw Alfred for the first time and asked what he was doing. Alfred responded that he was

---

[3]The record also refers to Alfred as "Scooter."

3

going to hold the ladder for Mixon, but Mixon told Alfred he did not need help and that he needed to get down. For reasons unknown to Mixon, Alfred responded he would move the ladder. Mixon saw Alfred pick up the ladder and move, then Mixon turned to cut the limb. It is unclear whether Alfred was in the limb's path; Appleton, who witnessed the incident, alleged he was, and Mixon maintained he was not. Nevertheless, Alfred tripped and fell off the boom truck, hit his head on the pavement, sustained a head injury that caused him to lose consciousness then become combative at the scene. After regaining consciousness briefly, Alfred was sedated, and transported to the hospital, but he never regained consciousness and died after being placed on hospice care.

Appleton sued Mixon and CCR, asserting causes of action for wrongful death, negligence, respondeat superior, negligent hiring and training, negligent supervision, and negligent infliction of emotional distress. CCR answered with a general denial and pleaded, among other things, that Mixon was not acting in the course and scope of any employment with CCR nor did Mixon have any authority to use the boom truck for the project in question, so CCR cannot be held liable for Appleton's claims.

## B. Motion for Summary Judgment, Response, and Evidence

CCR filed its Traditional and No-Evidence Motion for Summary Judgment. CCR's evidence in support of its Motion for Summary Judgment included: the

affidavit of George Turner, President and Owner of CCR; Mixon's employment application with CCR and records; and excerpts from Mixon's deposition with attached deposition exhibits.

CCR first addressed its traditional motion and argued that CCR "authorized [Mixon's] use of the boom truck for the sole, limited, and charitable act of setting the church flagpole." CCR argued that Mixon "deviated from that authorized act when he drove the boom truck to his home and used the boom truck as a work platform to cut a limb from one of his trees." CCR asserted that as the employer, it was not liable as a matter of law since the harm arose from a "frolic," and Mixon was acting outside the course and scope of his employment with CCR at the time the accident occurred. Specifically, CCR noted Mixon's deposition testimony and Turner's affidavit conclusively established he was not in the course and scope of his employment. With respect to the negligent infliction of emotional distress, CCR argued that a bystander plaintiff cannot recover as a matter of law unless the injured party has a legal right to recover himself, and here, CCR was not liable under a respondeat superior theory as a matter of law, so Appleton's bystander claim likewise fails.[4] Finally, CCR argued that it had no duty to Appleton as a matter of

_____

[4]On appeal, Appleton does not challenge the dismissal of the negligent infliction of emotional distress claim by assigning error. Accordingly, we do not disturb the dismissal of that cause of action. *See Yiamouyiannis v. Thompson*, 764 S.W.2d 338, 342 (Tex. App.—San Antonio 1988, writ denied) (citing *Prudential Ins. Co. v. J.R. Franclen, Inc.*, 710 S.W.2d 568, 569 (Tex. 1986); *Gulf Consol. Int'l,*

law, and it was unforeseeable to CCR that Mixon would use the boom truck as a work platform to cut a limb on his tree and unforeseeable that Appleton's husband would climb onto the boom truck, then fall off at Mixon's home.

In the no-evidence portion of its Motion, CCR asserted that for the respondeat superior claim, there was no evidence Mixon was acting in the course and scope of his employment. CCR also asserted that as to the negligent hiring, training, and supervision, there was no evidence that it owed the plaintiff a duty, that it breached that duty, or that the breach proximately caused the plaintiff's injury.

In her Response to Defendant's Motion for Summary Judgment, Appleton argued there were genuine issues of material fact and pointed to inconsistencies between Mixon's testimony and Turner's affidavit. Specifically, she argued that Mixon claimed Turner authorized him to take the boom truck on Friday and keep it overnight, whereas Turner averred in his affidavit that he specifically instructed Mixon to retrieve the boom truck on Saturday morning and drive it directly to the church and immediately back to CCR's yard. She further complained that CCR failed to produce Turner or a corporate representative for deposition and only

*Inc. v. Murphy*, 658 S.W.2d 565, 566 (Tex. 1983)) (explaining that the court of appeals would not disturb the trial court's ruling erroneously dismissing all causes of action although the motion for summary judgment did not address them all and appellant failed to assign error on appeal, the rulings); *see also Sanchez v. Rodriguez*, Nos. 13-00-059-CV, 13-00-060-CV, 2001 WL 34616782, at *7 (Tex. App.—Corpus Christi Oct. 4, 2001, no pet.) (citations omitted).

produced 303 pages of documents, so summary judgment would be improper.[5]

Appleton's evidence in support of her Response included: a CCR website printout containing a description of the company and type of work; Turner's affidavit; complete transcript of Mixon's deposition with exhibits; printed Mapquest routes from Mixon's house to the yard and from Mixon's house to the church; Mixon's handwritten statement; complete transcript of Appleton's deposition; email correspondence from counsel regarding corporate representative deposition and discovery; CCR's discovery responses; demonstrative exhibit showing Turner's

---

[5]Three days after filing her Response, Appleton filed a Motion to Compel and for Sanctions seeking depositions and additional written discovery responses. Appleton does not assign a separate point of error for the discovery issues but mentions them several times in her brief and notes that the trial court did not rule on her Motion to Compel. The record does not indicate she requested a hearing on her Motion to Compel prior to the summary judgment's submission, and it was Appleton's burden to do so. *See McKinney v. Nat'l Union Fire Ins. Co of Pittsburgh*, 772 S.W.2d 72, 75 (Tex. 1989) (placing responsibility for obtaining a hearing on discovery matters on the requesting party); *see also Corona v. Pilgrim's Pride Corp.*, 245 S.W.3d 75, 84 (Tex. App.—Texarkana 2008, pet. denied) (concluding complaint about discovery dispute was waived where party failed to present the motion to compel to the trial court until the summary judgment hearing and failed to request a ruling at the hearing). A party claiming the need for further discovery or that a motion for summary judgment is premature is required to file a verified motion for continuance or affidavit outlining the need for additional discovery. *See Tenneco Inc. v. Enterprise Prods. Co.*, 925 S.W.2d 640, 647 (Tex. 1996). The record before us does not show she did either. To the extent Appleton attempts to complain about this, she did not preserve it for our review. *See id.*; *Ratcliff v. LHR, Inc.*, No. 09-07-00566-CV, 2009 WL 1474725, at *2 (Tex. App.—Beaumont May 28, 2009, pet. denied) (mem. op.).

affidavit testimony with arguments underneath addressing conflicting evidence; and pictures of CCR's yard.

In its Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment, CCR countered there was no inconsistency between Mixon and Turner regarding Mixon's lack of authorization to use the boom truck to cut a limb at his home and they agreed on that fact. CCR also argued the fact there was an inconsistency regarding whether Mixon had permission to take the boom truck on Friday and park it at his house was inconsequential as the accident did not occur when it was parked in Mixon's driveway Friday night; rather, it did not occur until Mixon undertook an unauthorized use of cutting the limb at his home. CCR also addressed the discovery issues in its Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment. CCR asserted that given the consistency concerning Mixon's lack of authorization and based on the depositions already taken, Turner should not be forced to sit through and pay for a harassing deposition when Mixon already testified he was not in the course and scope of his employment, and it is clear the claims are baseless. CCR further contended Appleton waited until depositions were completed to send written discovery, which CCR answered and had not withheld anything. CCR explained that because the accident did not occur at a job site, CCR did not conduct an investigation or take photos. CCR further noted that the boom truck's lease had expired, and it could not produce pictures it did not have.

8

The trial court granted CCR's Traditional and No-Evidence Motion for Summary Judgment and severed Appleton's claims against CCR.[6]

## II. Standard of Review

We review a trial court's decision to grant summary judgment *de novo. See Shell Oil Co. v. Writt*, 464 S.W.3d 650, 654 (Tex. 2015) (citation omitted). We view the evidence in the light most favorable to the nonmovant. *Id.* (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex. 2005)). In doing so, we indulge every reasonable inference and resolve any doubts against the motion. *See City of Keller*, 168 S.W.3d at 824. "Undisputed evidence may be conclusive of the absence of a material fact issue, but only if reasonable people could not differ in their conclusions as to that evidence." *Buck v. Palmer*, 381 S.W.3d 525, 527 (Tex. 2012) (citation omitted).

When a no-evidence motion has been filed, it "is essentially a pretrial directed verdict, and we apply the same legal sufficiency standard in reviewing a no-evidence

[6]On appeal, a question arose regarding whether the trial court's Order granting CCR's Motion for Summary Judgment signed on June 29, 2021, constituted a final, appealable judgment as it did not contain decretal language. This Court determined it lacked essential decretal language that disposed of Appleton's claims against CCR. Accordingly, this Court abated the appeal and remanded the cause to the trial court for the trial court to issue further orders or judgments "necessary to create a final, appealable order in this cause." The trial court signed an amended Order granting CCR's Motion for Summary Judgment which included language of finality and indicated it disposed of all claims and parties and was appealable.

summary judgment as we apply in reviewing a directed verdict." *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750–51 (Tex. 2003) (citations omitted).

> A no evidence point will be sustained when (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact.

*Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997) (citation omitted).

A party moving for traditional summary judgment has the burden of establishing there is no genuine issue of material fact as to at least one requisite element of the asserted cause of action and that it is entitled to judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c); *Lightning Oil Co. v. Anadarko E&P Onshore, LLC*, 520 S.W.3d 39, 45 (Tex. 2017) (citations omitted). When the trial court fails to specify the grounds on which it granted summary judgment, we must affirm if any of the summary judgment grounds are meritorious. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872–73 (Tex. 2000) (citation omitted). If a defendant files a combined traditional and no-evidence summary judgment motion, we first review the judgment under the no-evidence standards of Rule 166a(i). *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600–01 (Tex. 2004); *Werth v. Johnson*, 294 S.W.3d 908, 909 (Tex. App.—Beaumont 2009, no pet.). When the underlying facts are undisputed, the analysis becomes a question of law for the judge; however, if the

10

facts are disputed, it is a question for the trier of fact. *See Richey v. Brookshire Grocery Co.*, 952 S.W.2d 515, 518 (Tex. 1997).

### III. Analysis

**A. Respondeat Superior**

In her first issue, Appleton challenges the trial court's summary judgment in favor of CCR on her respondeat superior claim and argues Mixon was acting within the course and scope of his employment. CCR counters that the trial court properly granted both its no-evidence and traditional motion for summary judgment, because 1) the evidence establishes that Mixon was not acting in the course and scope of his employment, and 2) Appleton presented no evidence to establish that Mixon was acting in the course and scope of his employment.

"Under the common-law doctrine of respondeat superior, or vicarious liability, 'liability for one person's fault may be imputed to another who is himself entirely without fault solely because of the relationship between them.'" *Painter v. Amerimex Drilling I, Ltd.*, 561 S.W.3d 125, 130 (Tex. 2018) (quoting *St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 540 (Tex. 2002)). Respondeat superior is an exception to the general rule that a person has no duty to control another's conduct. *Id.* To impose vicarious liability on an employer for a worker's negligence, the plaintiff must show, at the time of the negligent conduct, the worker was (1) an employee and (2) acting in the course and scope of his employment. *Id.* at 131;

11

*Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 757 (Tex. 2007). The parties do not dispute Mixon's status as CCR's employee. The issue in this case is whether he was acting within the course and scope of his employment at the time Alfred was injured. *See Painter*, 561 S.W.3d at 131; *Mayes*, 236 S.W.3d at 757.

With the course-and-scope element, vicarious liability arises only if the tortious act falls within the scope of the employee's general authority in furtherance of the employer's business and for the accomplishment of the object for which he was hired. *Painter*, 561 S.W.3d at 131; *Mayes*, 236 S.W.3d at 757 (quoting *Minyard Food Stores, Inc. v. Goodman*, 80 S.W.3d 573, 577 (Tex. 2002)). "Further, the act 'must be of the same general nature as the conduct authorized or incidental to the conduct authorized. Accordingly, if an employee deviates from the performance of his duties for his own purposes, the employer is not responsible for what occurs during that deviation.'" *Painter*, 531 S.W.3d at 131 (quoting *Mayes*, 236 S.W.3d at 757).

The Texas Supreme Court has recognized the coming-and-going rule in the workers' compensation context, which is generally, a worker's injury received using public streets and highways when going or returning from the place of employment is not compensable as it was not incurred in the course and scope of employment. *See Painter*, 531 S.W.3d at 136. However, the Court noted that a "special mission" might exist when an employee is traveling from his home or returning to it on a

12

special errand as part of his regular duties, at the specific request of his employer or performing a service in furtherance of his employer's business. *See id.* The Court was clear, though, that even with these potential exceptions that an "employer is not responsible for what occurs when an employee deviates from the performance of his duties for his own purposes" even with the employer's express or implied permission. *See id.* at 137; *Mayes*, 236 S.W.3d at 757. The Court explained that stopping for a meal, running a personal errand, or traveling elsewhere would impact the course-and-scope analysis. *See Painter*, 561 S.W.3d at 137.

Mixon testified that Turner authorized him to take the boom truck on Friday evening, but Turner averred in his affidavit that he authorized Mixon to take the truck on Saturday morning directly to the church to set the flagpole, then return it immediately to the yard. Appleton argues that the inconsistencies between Mixon's testimony and Turner's affidavit regarding when Mixon had permission to remove the crane created a material fact issue. We disagree. Regardless of whether Mixon was authorized to take the crane on Friday evening and park it at his home, the accident occurred on Saturday after Mixon completed his work setting the flagpole at the church. Turner averred in his affidavit that he instructed Mixon to return the crane immediately to the yard after setting the flagpole. Mixon did not dispute this in his deposition nor was there any other evidence to the contrary.

13

Mixon's handwritten statement showed that he generally planned to install a light on a tree at the end of his drive but needed to cut a small limb; however, he testified he did not have a preexisting plan to use the boom truck as a work platform and instead, it was a coincidence that he had the truck at his house, and it could serve as a work platform to reach the limb. Most importantly, Mixon testified that when he used the boom truck as a work platform and cut the limb at his house, it was his decision, he did not tell anyone at CCR he was doing so, he was taking care of his personal property, and it did nothing to further CCR's business. Turner's affidavit likewise averred this was the case. Viewing the evidence in the light most favorable to Appleton as the non-movant, the evidence conclusively established Mixon was not acting in furtherance of CCR's business at the time, and therefore, was not acting in the course and scope of his employment. *See id.* at 136–37; *Mayes*, 236 S.W.3d at 757; *see also Writt*, 464 S.W.3d at 654. Appleton failed to present any evidence raising a genuine issue of material fact that Mixon was acting in the course and scope of his employment. *See* Tex. R. Civ. P. 166a(i); *Ridgway*, 135 S.W.3d at 600. The trial court properly granted CCR's Traditional and No-Evidence Motion for Summary Judgment. *See* Tex. R. Civ. P. 166a(i); *Chapman*, 118 S.W.3d at 751 (citation omitted) (explaining no-evidence motion for summary judgment is proper where the evidence conclusively establishes the opposite of a vital fact); *OCI*

14

*Beaumont LLC v. Barajas*, 520 S.W.3d 83, 87 (Tex. App.—Beaumont 2017, no pet.) (same). We overrule issue one.

## B. Negligent Hiring/Training and Supervision

In her second issue, Appleton challenges the trial court's grant of summary judgment in favor of CCR on her negligent supervision and training claims.[7] In support of this issue, Appleton argues that it was foreseeable that unauthorized individuals climbing on the boom truck could fall off and get hurt. In its Motion for Summary Judgment, CCR argued that it was unforeseeable that Mixon would use the boom truck to cut a limb at his home and that Alfred would climb up uninvited to assist and then fall off, and CCR argued that it owed no duty to Alfred as a matter of law. Further, CCR asserted there was no evidence that CCR owed a duty, that it breached a duty, or that the breach proximately caused plaintiff's injury as to the negligent hiring, training, and supervision claims.

"Negligent hiring, retention, and supervision claims are negligence causes of action based on an employer's direct negligence rather than on vicarious liability." *Mingrun, Inc. v. Wheaton*, No. 09-21-00198-CV, 2022 WL 2068857, at *8 (Tex. App.—Beaumont June 9, 2022, no pet.) (mem. op.) (citing *Doe v. YUM! Brands, Inc.*, 639 S.W.3d 214, 225 (Tex. App.—Houston 2021, no pet.)); *see also Douglas*

---

[7]In her Petition Appleton asserted the cause of action as "Negligent Hiring/Training."

*v. Hardy*, 600 S.W.3d 358, 366 (Tex. App.—Tyler 2019, no pet.). To establish a negligence claim, a plaintiff must show: (1) a legal duty owed by one person to another; (2) a breach of that duty; and (3) damages proximately resulting from the breach. *Elephant Ins. Co., LLC v. Kenyon*, 644 S.W.3d 137, 144 (Tex. 2022); *Douglas*, 600 S.W.3d at 366. To prevail on a negligent supervision, hiring, or training claim, a plaintiff must prove: (1) the defendant owed him a legal duty to supervise or train its employees; (2) the employer breached the duty; and (3) the breach proximately caused the plaintiff's injuries. *Douglas*, 600 S.W.3d at 367. With a negligent hiring and supervision claim, an employer who negligently hires an incompetent or unfit individual may be directly liable to a third party whose injury was proximately caused by the employee's negligent act. *Endeavor Energy Res., L.P. v. Cuevas*, 593 S.W.3d 307, 311 (Tex. 2019). "[T]o impose liability on an employer under a theory of negligent hiring or retention, a plaintiff must show the employer's failure to investigate, screen, or supervise its employees proximately caused the injuries." *Douglas*, 600 S.W.3d at 367 (citation omitted). Similarly, for negligent supervision, an employer's failure to supervise must proximately cause the injury. *See id.*  For a negligent training claim, "a plaintiff must prove that a reasonably prudent employer would have provided training beyond that which was given and that failure to do so caused his injuries." *Id.* (citation omitted).

16

Duty

"An employer has a duty to adequately hire, train, and supervise employees." *Castillo v. Gared, Inc.*, 1 S.W.3d 781, 786 (Tex. App.—Houston [1st Dist.] 1999, pet. denied). However, as the Supreme Court of Texas explained in *Pagayon v. Exxon Mobil Corporation*, it has not adopted a general duty to control others, but employers may, under some limited circumstances, have a duty to control their employees. *See* 536 S.W.3d 499, 500, 504 (Tex. 2017). Whether a legal duty exists for an employer is a matter of law and depends on balancing "the risk, foreseeability, and likelihood of injury . . . versus the burdens on and consequences to employers, and the social utility of the realities of the workplace." *Id.* at 505–06; *see also Douglas*, 600 S.W.3d at 367–68 (discussing *Pagayon* and balancing factors when no duty has been recognized under the particular circumstances). Whether a defendant owes a plaintiff a legal duty of care is a threshold issue which the plaintiff must establish to succeed in a negligence action. *Pagayon*, 536 S.W.3d at 503; *Nabors Drilling, U.S.A., Inc. v. Escoto*, 288 S.W.3d 401, 404 (Tex. 2009).

Proximate Cause: Foreseeability

"The components of proximate cause are cause in fact and foreseeability[,]" which cannot be proven by "mere conjecture, guess, or speculation." *Doe v. Boys Clubs of Greater Dall., Inc.*, 907 S.W.2d 472, 477 (Tex. 1995) (citations omitted); *see also Bos v. Smith*, 556 S.W.3d 293, 303 (Tex. 2018). Foreseeability, the aspect

17

of proximate cause challenged here, "requires that a person of ordinary intelligence should have anticipated the danger created by a negligent act or omission." *Doe*, 907 S.W.2d at 478 (citing *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 549–50 (Tex. 1985)).

Analysis: Balancing of Duty Factors

With the above framework in mind, we must determine the threshold question of whether CCR owed a legal duty by balancing the relevant factors noted above. *See Pagayon*, 536 S.W.3d at 506. CCR's employee, Mixon, undisputedly had possession of a boom truck leased by CCR, and Mixon had permission from CCR to use the boom truck at the church to install a flagpole. That said, Mixon completed that task, and then decided to use the boom truck for his own benefit and for a personal task and away from CCR's business, outside of what CCR had authorized when he used the boom truck as a work platform to cut a limb at his own home. The uncontroverted evidence shows Alfred was injured after he climbed onto the bed of the boom truck to hold the ladder without invitation or authorization from Mixon.

First, we conclude the risk of a similar occurrence is small. *See id.* at 507. This is not a situation in which repeated occurrences could pose a threat to the public. The issue is whether an employer should be required to supervise or train an employee in possession of company property to ensure that members of the public at large are not climbing on and accessing their equipment. Appleton argues on appeal that

18

"there is a high risk unauthorized individuals could get seriously hurt while climbing on CCR's boom truck." While that statement may be true, it is not framed correctly. The question is whether an employer should supervise or train employees in possession of a boom truck on how and what the employees should do to prevent neighbors, strangers, or members of the public at large from climbing on and accessing the equipment. Appleton contends the fact that CCR trains its employees on safety, holds regular safety meetings, and employs individuals like Mixon to be a "safety observer" supports its position that there is a high risk unauthorized individuals could get seriously injured if they climb on CCR's boon truck. We disagree. Safety training provided by CCR to its employees provides safe practices on the job, where its employees would normally be working on authorized tasks in furtherance of its business, but this does not support the plaintiff's argument. Here, Mixon was using the boom truck outside of work, without authority, to cut a tree limb at his own property, and Alfred, a third party with whom CCR had no relationship, climbed onto the equipment without permission. There was no evidence in the record that similar occurrences were common or had happened before. Moreover, Appleton fails to establish what training or supervision a reasonably prudent employer should have undertaken that CCR failed to do that could have prevented this. These were unique circumstances, and the risk of a similar

occurrence is small. *See id.* This factor weighs against imposing a duty on the employer.

Next, the foreseeability of the event is also small. *See id.* In this situation, Mixon was a certified crane operator and a long-term exemplary employee who had no history of reckless or unsafe behavior and "always followed the direction of his superiors at CCR[.]" CCR's employment records for Mixon show they checked his references upon hire and indicate he was a responsible worker. Appleton did not provide evidence to contradict this information. Appleton again argues that it was foreseeable unauthorized individuals climbing on a boom truck could fall and get hurt and points to Mixon's responsibility with CCR to act as a safety observer to support this contention. While we agree that unauthorized individuals might sustain injuries around heavy equipment, it does not mean the circumstances here were foreseeable. Nothing indicates the employer knew or could have foreseen that Mixon would use the boom truck in an unauthorized manner to cut a limb at his home, nor that CCR could foresee that a neighbor or stranger would climb onto the boom truck uninvited to hold a ladder for a CCR employee who had not requested help. While Appleton and Mixon testified that it is true the neighbors often helped one another with tasks, the uncontroverted evidence established that CCR did not authorize Mixon to use the boom truck at his house, and there is no evidence to show that CCR should have anticipated Alfred would climb on the boom truck. The likelihood that

CCR could have anticipated the potential risk for injury in this situation is small. "Any duty an employer has to control its employees should not make it an absolute insurer of the safety" of uninvited third parties accessing heavy equipment. *See id.* This factor also weighs against imposing a duty on the employer.

The burden on the employer would likely be significant. *See id.* Although Appleton generally argued CCR should provide training, she has failed to argue or show with any specificity what training or supervision CCR failed to provide that caused Alfred's injuries. *See Douglas*, 600 S.W.3d at 367 (noting that for negligent training plaintiff must show a reasonably prudent employer would have provided training beyond what was given and that failure caused injuries). To impose a duty to prevent a similar occurrence, in terms of supervision, an employer would be required to send extra employees to monitor the heavy equipment off-site in a qualified operator's possession to ensure nobody accessed the equipment while it was parked or set up. Such measures have the potential to "significantly burden the employment relationship." *See Pagayon*, 536 S.W.3d at 508. Also, without specifying what training a reasonably prudent employer would have provided that CCR did not provide, this factor also weighs against imposing a duty on the employer.

The consequences can be extreme. *See id.* We will assume the fall from the truck bed led to Alfred's death. A death resulting from these circumstances was

21

extreme. This factor may weigh in favor of imposing a duty on CCR. However, the social utility is small. *See id.* Even if CCR could have prevented Mixon from using the boom truck to cut the limb on his property and Mixon could have stopped Alfred from unilaterally climbing onto the bed of the truck, we conclude the overall social utility is small. Any social utility to requiring an employer to incorporate some additional training or to continuously monitor its equipment to prevent strangers from climbing on the equipment and then falling off, or to anticipate that an employee who took company equipment authorized for a specific use and then deviated to use it for his own purposes, is minimal. This factor weighs against imposing a duty on the employer.

After examining the factors that determine duty, we hold that an employer in circumstances like those presented here owes no duty to further train or supervise its employees. We overrule issue two.

### IV. Conclusion

Having overruled Appleton's issues, we affirm the trial court's judgment.

AFFIRMED.

_____
W. SCOTT GOLEMON
Chief Justice

Submitted on November 17, 2022
Opinion Delivered December 22, 2022

Before Golemon, C.J., Kreger, and Johnson, JJ.

22